Filed 3/13/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| EDWARD DAVIDSON, | D071502 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00006640-CU-BT-CTL) |
| SETERUS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County,
Joel M. Pressman, Judge. Reversed.

Capstone Law, Glenn A. Danas, Melissa Grant, Liana C. Carter and Arnab
Banerjee for Plaintiff and Appellant.

Larson O'Brien, Stephen G. Larson, Robert C. O'Brien and Paul A. Rigali and
Steven A. Haskins for Defendants and Respondents.

Wright, Finlay & Zak and Jonathan D. Fink for American Legal & Financial
Network, California Mortgage Association and California Mortgage Bankers Association
as Amicus Curiae on behalf of Defendants and Respondents.

INTRODUCTION

At issue in this appeal is whether mortgage servicers can be "debt collectors" under California's Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act; Civ. Code,[1] § 1788 et seq.). There is a split of authority among the many federal district courts that have considered the issue, and there is a paucity of California authority addressing the question.

In this case, the plaintiff, Edward Davidson, brought a putative class action against Seterus and its parent company, International Business Machines, Inc. (IBM), alleging that the defendants violated the Act and the Unfair Competition Law (UCL). The defendants demurred to Davidson's complaint, arguing that neither of them is a " 'debt collector' " who engages in " 'debt collection' " under the Act.[2] The trial court sustained the defendants' demurrer, concluding that the defendants "are not 'debt collectors' because servicing a mortgage is not a form of collecting 'consumer debts.' "[3]

On appeal, Davidson contends that the trial court erred in determining that mortgage servicers are not "debt collectors" under the Rosenthal Act. We ultimately agree with Davidson's contention, in no small part due to our adherence to "the general

---

[1] Further statutory references are to the Civil Code unless otherwise indicated.

[2] IBM also demurred on the ground that the facts as alleged are insufficient to state a cause of action as to it because the complaint does not establish that IBM was a debt collector or that it may be held liable for Seterus's conduct.

[3] The trial court also concluded that the claims against IBM failed, independently, because Davidson failed to plead sufficient facts to hold parent company IBM liable for the actions of its subsidiary, Seterus.

rule that civil statutes for the protection of the public are, generally, *broadly construed in favor of that protective purpose*." (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313, italics added; see *Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447, 450.) It is clear that the Rosenthal Act is a civil statute that was enacted for the protection of the public, and in interpreting it, we are mindful of the fact that, to the extent that the statutory language is ambiguous, the statute should be construed broadly in favor of protecting the public. Given this principle, and the fact that the Rosenthal Act's definitional language is sufficiently broad to include mortgage lenders and/or mortgage servicers within its purview, we conclude that mortgage lenders and mortgage servicers can be "debt collectors" under the Rosenthal Act.

We therefore reverse the judgment of the trial court and remand for further proceedings.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

In February 2012, Davidson's lender, Suntrust, transferred the servicing of his home mortgage to Seterus.[4] In correspondence with Davidson, Seterus included the

---

[4] According to the complaint, on March 26, 2007, IBM formed IBM Lender Business Process Services, Inc., a wholly owned subsidiary of IBM specializing in providing mortgage services. In July 2011, IBM Lender Business Process Services, Inc. changed its name to Seterus, Inc. As alleged in the complaint, "[a] major component of DEFENDANTS' mortgage servicing business entails collecting and processing monthly mortgage payments from borrowers on behalf of the mortgage lender or current mortgage holder." Davidson's allegations against IBM are based on its role as the parent company

3

following disclaimer: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

According to Davidson, immediately after Seterus began servicing Davidson's mortgage in 2012, Seterus started making harassing and annoying telephone calls to Davidson demanding payment of his mortgage. Davidson alleges that Seterus made these telephone calls demanding payment before Seterus had given him his new loan number and before his mortgage payments were due.

Davidson's mortgage payments are due on the first day of each month. His practice was, and had always been, to pay his monthly mortgage payment online on the first or second of each month. As Davidson alleges, "California Civil Code section 2954.4 (a) provides for a 10-day statutory grace period on residential mortgage installment payments, such that they are not considered 'late' 'until at least 10 days following the due date of the installment.' " Davidson further alleges that, "Plaintiff's and other borrowers' mortgage instruments provide for either a 10-day or 15-day grace period

---

of Seterus, and the further allegations that both Seterus and IBM performed the acts and omissions alleged in the complaint, so such acts and omissions were attributable to them, and that each was "acting as the agent for the other, with legal authority to act on the other's behalf." Davidson further alleges that each of the defendants "ratified each and every act or omission complained of" in the complaint and that each of them "aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged." For this reason, Davidson alleges that "each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein."

4

following the due date of an installment payment before a payment will be considered 'late.' "

Although Davidson had a history of timely paying his mortgage each month, individuals identifying themselves as Seterus employees called Davidson's cell phone two to five times per day, every day, between the 3rd and the 16th of each month, "demanding that he pay that month's mortgage payment." If Davidson did not answer his phone, the caller would hang up and repeatedly call again until Davidson did answer the phone. According to Davidson, Seterus employees would also frequently hang up even if Davidson did answer his phone.

Between February 2012 and September 2015, Davidson received hundreds of phone calls from employees of Seterus demanding mortgage payments that Davidson had already paid or that were not yet due. Davidson alleges that Seterus employees would call at intentionally inconvenient times, including early in the morning and while Davidson was at work.[5] As soon as the monthly due date for Davidson's mortgage payment had passed, Seterus employees would begin making harassing and sometimes threatening phone calls. In fact, Seterus employees would make these phone calls even after Davidson had paid the full amount due, and before the statutory and contractual grace period had lapsed. Davidson attempted to explain this to the callers, but the calls continued.

---

[5]    At least one call, made on September 17, 2015, was placed at 6:48 a.m.

In an attempt to put a stop to the calls from Seterus employees, Davidson began using a " 'Western Union Speedpay' " payment method that Seterus invited borrowers to use on its website. Davidson incurred a $5.00 transaction fee each month to utilize this payment method. Davidson's use of the " 'Western Union Speedpay' " payment method did nothing to abate the harassing phone calls from Seterus employees.

According to Davidson, the phone calls from Seterus employees included threats to report negative credit information to the credit bureaus, as well as threats to foreclose on Davidson's home.[6] These threats were made despite the fact that the calls were being made to Davidson and others during the grace period, such that it would have been unlawful for Seterus to commence foreclosure proceedings or to report negative credit information to the credit bureaus.

Davidson notified Seterus numerous times, both in writing and by telephone, that he had already timely paid the full monthly payment amount and requested that the harassing phone calls stop. Seterus employees continued to call, despite Davidson's requests. In or around September 2015, Davidson asked an attorney to contact Seterus and demand that the harassing and threatening phone calls cease.

Seterus employees stopped calling Davidson after Seterus received a threat of legal action from Davidson's attorney.

---

[6] The complaint alleges that Seterus employees made similar threats to other members of the putative class.

On August 13, 2014, Seterus sent a letter to Davidson in which it agreed to stop contacting Davidson during the 15-day grace period, thereby implicitly acknowledging that Seterus employees had previously been contacting him during the grace period.

Davidson alleges that Seterus's collection practices caused him and other borrowers harm, including emotional distress and economic damages. Davidson spent many hours each month sending Seterus requests that its employees cease calling him, speaking to Seterus employees on the phone, and generally dealing with the harassment. Davidson alleges that because he is self-employed and had to deal with the harassing phone calls during regular business hours, he lost potential income.

B.  *Procedural background*

1.  *The complaint*

Davidson filed a putative class action on behalf of California residents who have been subjected to the defendants' allegedly unlawful debt collection practices, in September 2016. Davidson's complaint set forth causes of action for violations of the Rosenthal Act and the UCL (Bus. & Prof. Code, § 17200 et seq.).

Davidson alleges that the defendants are " 'debt collectors' " who are subject to the requirements of the Rosenthal Act, and that they were acting as " 'debt collectors' " when they undertook the allegedly unlawful conduct described in his complaint. Davidson alleges that the defendants' conduct violates the Rosenthal Act's prohibitions against " '[c]ausing a telephone to ring repeatedly or continuously to annoy the person called' " and " 'communicating by telephone . . . with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances.' "

7

(§ 1788.11, subds. (d), (e).) He further alleges that the defendants violated the prohibition against " '[t]he false representation that information concerning a debtor's failure or alleged failure to pay a consumer debt has been or is about to be referred to a consumer reporting agency' " (§ 1788.13, subd. (f)), and that defendants violated the Rosenthal Act's requirement that they comply with the federal Fair Debt Collection Practices Act (the FDCPA; 15 U.S.C. § 1692 et seq.).

Davidson's UCL cause of action is based on the alleged violations of the Rosenthal Act which, he asserts, constitute per se violations of the UCL.

2. *The defendants' demurrer*

The defendants filed a demurrer to Davidson's complaint on May 11, 2016. The defendants argued that Davidson is unable to state facts sufficient to constitute a cause of action under the Rosenthal Act because neither Seterus nor IBM is a " 'debt collector' " who " 'engages in debt collection' " under the Rosenthal Act. IBM also argued that the cause of action against IBM is too uncertain because the complaint does not allege sufficient facts to establish that IBM is a debt collector and that it is liable for Seterus's conduct.

After full briefing, the trial court issued a tentative ruling on the defendants' demurrer on September 6, 2016, in which it indicated its intention to sustain the demurrer without leave to amend. The court held a hearing on the matter on September 9, and subsequently adopted its tentative ruling. In sustaining the demurrer without leave to amend, the trial court acknowledged the existence of a split of authority in the federal courts as to whether the Rosenthal Act's definition of "debt collector" includes a

8

mortgage servicer.  However, the court agreed with those courts that have concluded that a mortgage servicer may not be considered to be a "debt collector" under the Rosenthal Act.  The court determined that because Davidson's UCL claim was derivative of his Rosenthal Act claim, the complaint failed to state a cause of action.  The court also ruled, in the alternative, that as to IBM, the complaint failed to plead sufficient facts to demonstrate that IBM could be held liable for the actions of its subsidiary, Seterus.  The trial court further determined that no amendment could cure the deficiencies of the complaint, and that the demurrer should therefore be sustained without leave to amend.

The trial court entered judgment in favor of the defendants on October 5, 2016. Davidson filed a timely notice of appeal.

III.

DISCUSSION

A.  *Legal standards on appeal from the sustaining of a demurrer without leave to amend*

We apply the following well-established law in reviewing a trial court's order sustaining a demurrer without leave to amend:  "We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action.  [Citation.]  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken.  [Citation.]  We construe the pleading in a reasonable manner and read the allegations in context."  (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111 (*Fremont Indemnity*).)

9

Where the complaint fails to allege facts sufficient to state a cause of action and the trial court has sustained a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.  *The trial court erred in concluding that a mortgage servicer can never be a "debt collector" under the Rosenthal Act*

1.  *Statutory interpretation standards*

This case hinges on the proper interpretation of the Rosenthal Act.  "The basic rules of statutory construction are well established.  'When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body.'  [Citation.]  ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent.  [Citation.]  The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context."  [Citation.]  If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' "  (*People v. King* (2006) 38 Cal.4th 617, 622.)

"If, however, 'the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory

10

scheme encompassing the statute." ' " ' " (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

2. *Statutory and legal framework*

The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." (§ 1788.1, subd. (b).) The Rosenthal Act is " 'a remedial statute [that] *should be interpreted broadly in order to effectuate its purpose.*' " (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 340 (*Komarova*), italics added.) It was enacted in 1977, the same year that its federal counterpart, the FDCPA, was enacted. (*In re Landry* (Bankr. E.D.Cal. 2013) 493 B.R. 541, 570 (*Landry*).)[7] In addition to its other requirements and prohibitions, the Rosenthal Act generally requires debt collectors to comply with the provisions of the FDCPA. (§ 1788.17.)

The Rosenthal Act defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engaged in *debt collection.*" (§ 1788.2, subd. (c), italics added.) The Rosenthal Act defines the term "debt collection" as follows: "any act or practice in connection with the collection of consumer debt." (§ 1788.2, subd. (b).)

---

[7] The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure [*sic*] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." (15 U.S.C. § 1692, subd. (e).) "A basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve 'the right to be treated in a reasonable and civil manner.' " (*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.* (7th Cir.1997) 111 F.3d 1322, 1324.)

The Rosenthal Act defines "consumer debt" and "consumer credit" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." (§ 1788.2, subdivision (f).) The Rosenthal Act further defines the phrase "consumer credit transaction" as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." (§ 1788.2, subd. (e).)

Thus, a debt collector is a person who regularly engages in the act or practice of collecting money, property or their equivalent that is due or owing by a natural person as a result of a transaction between that person and another person, in which the natural person acquired property, services, or money on credit, primarily for personal, family, or household purposes.

3. *Analysis*

The Rosenthal Act is silent with respect to whether it applies to persons or entities attempting to collect mortgage debt; the definitions of "debt collector," "consumer debt," and "consumer credit transaction" make no reference to mortgage lenders and/or servicers or to mortgage debt. Given that mortgage debt is neither expressly included *nor* excluded from the definition of "consumer debt," and that a mortgage transaction is neither expressly included nor excluded from the definition of "consumer credit transaction," we look to the words of the statute to determine whether they can be understood to either include or exclude from the statute's purview mortgage debt or mortgage lenders and/or

12

servicers, keeping in mind that the Rosenthal Act " 'should be interpreted *broadly* in order to effectuate its purpose.' " (*Komarova*, *supra*, 175 Cal.App.4th at p. 340.)

The phrase, "consumer credit transaction" includes any "transaction between a natural person and another person in which *property, services or money* is acquired *on credit* by that natural person from such other person *primarily for personal, family, or household purposes*." (§ 1788.2, subd. (e), italics added.) The Rosenthal Act does not define the phrase "on credit" or the word "credit." The Oxford English Dictionary defines the phrase "on credit" as "[w]ith an arrangement to pay later." (Oxford English Dict. (2018) <https://en.oxforddictionaries.com/definition/on_credit> [as of Mar. 12, 2018].) It also defines "credit" as "[t]he ability of a customer to obtain goods or services before payment, based on the trust that payment will be made in the future." (Oxford English Dict. (2018) <https://en.oxforddictionaries.com/definition/credit> [as of Mar. 12, 2018].) The American Heritage Dictionary defines "credit" as "a. An arrangement for deferred payment of a loan or purchase . . . . [¶] b. The terms governing such an arrangement . . . . [¶] c. The time allowed for deferred payment." (The American Heritage Dict. of the English Language (2018) <https://www.ahdictionary.com/word/search.html?q=credit> [as of Mar. 12, 2018].)[8] Based on these definitions, we conclude that the "ordinary and usual meaning" of the phrase "on credit" can be stated as obtaining something of value without immediate payment on the promise to make a payment or payments in the future. We may thus

---

[8] Courts often consult dictionaries in an effort to determine the usual and ordinary meaning of a word. (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1499.)

construe section 1788.2, subdivision (e) as providing that a "consumer credit transaction" is "a transaction between a natural person and another person in which property, services or money is acquired [without immediate payment and with the promise to pay in the future] by that natural person from such other person primarily for personal, family, or household purposes."

The obtaining of a mortgage involves a transaction in which a natural person acquires property by way of borrowing the funds used to obtain the property from another person or entity without full immediate payment and with the promise to pay back those funds. It is readily apparent that persons who obtain mortgages very often do so in order to purchase a primary or even secondary residence, which may be considered to be a "personal, family, or household purpose[ ]." (§ 1788.2, subd. (e).) Further, there is nothing in the statutory definition of "consumer debt" or "consumer credit transaction" that would exclude a debt that otherwise comes within the terms of the Rosenthal Act merely because the debt is *secured* by real or personal property. At least one other California appellate court has permitted a Rosenthal Act claim to go forward against a lender who was attempting to collect on a residential mortgage loan secured by a junior lien. (See *Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29 (*Alborzian*).)[9]

---

[9]    Although the *Alborzian* court did not directly address the issue whether a mortgage lender comes within the Rosenthal's Act's definition of a "debt collector," the court clearly treated mortgage debt as falling within the framework of the Rosenthal Act's protections. (See *Alborzian*, *supra*, 235 Cal.App.4th at pp. 36–38.)

14

Interpreting the Rosenthal Act in this way furthers the purpose of the legislation, which is to prohibit entities who are attempting to collect on a debt from "engaging in unfair or deceptive acts or practices in the collection of [those] debts."  (§ 1788.1, subd. (b).)  Although Seterus's disclaimer in its correspondence with Davidson that it is a " 'debt collector' " that is " 'attempting to collect a debt' " (capitalization omitted) is not itself dispositive of the issue, the fact that the defendants indicate to consumers that the activities that they are undertaking with respect to mortgage servicing involves *debt collection* is in line with our interpretation of the Rosenthal Act.  Further, the conduct that Davidson alleges that the defendants engaged in—i.e., the harassing telephone calls at all hours of the day, and the threats of negative credit reporting and threats to foreclose—is precisely the type of conduct that the Legislature wanted to protect consumers against when it enacted the Rosenthal Act.  (See, e.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 237 (1977–1978 Reg. Sess.), as amended May 11, 1977 ["This bill would prohibit any person from engaging in certain debt collection practices" including a "list of prohibited threatening, abusive and deceptive practices"]; Assem. Com. on Judiciary, Bill Digest for Sen. Bill No. 237 (1977–1978 Reg. Sess.), as amended June 24, 1977, hearing date Aug. 4, 1977 ["This measure governs all debt collection practices arising from the extension of credit if the credit was obtained primarily for personal, family, or household

We reject the defendants' attempt to distinguish the debt at issue in *Alborzian*, which was no longer secured by the property because of the foreclosure process, from Davidson's debt or a debt secured by a first mortgage.  We see nothing in the Rosenthal Act that would allow debts that were acquired for personal, family, or household purposes to be treated differently under the Rosenthal Act on the ground that one debt remains secured by real property while the other does not.

purposes" and prohibits, among other things, the "caus[ing] a telephone to ring repeatedly"].)

In arguing that the Rosenthal Act does not apply here, the defendants suggest that mortgage debt is not debt " 'obtained primarily for personal, family, or household purposes.' "[10] However, defendants fail to explain why this would be so. We acknowledge that the phrase "consumer," when used as an adjective to modify other nouns, has often been understood in common parlance to relate to transactions that involve retail purchases, as opposed to transactions involving real estate. However, when one examines the definitions provided in the Rosenthal Act, it becomes clear that the focus of the Rosenthal Act is not whether a given transaction involves personal property as opposed to real property, but rather, whether the transaction was engaged in by a natural person for personal purposes, as opposed to by a corporation or natural person for business purposes. It is clear that a large number, if not the vast majority, of individuals who obtain a mortgage do so for the purpose of purchasing a personal or family residence. This would fall within the literal terms of Rosenthal Act's definition of debt

---

10      Although their contention is not at all clear to this court, defendants appear to suggest this by stating that the "Rosenthal Act, as its plain language reveals, governs debt collection only where the credit was 'obtained primarily for personal, family, or household purposes,' " and then arguing that "[t]he *Landry*[, *supra*, 493 B.R. 541] decision takes for granted that mortgage payments fall into the consumer category, without justification." The implication of these statements is that in defendants' view, the *Landry* court was incorrect in concluding that mortgage payments are payments made to pay off debt that was obtained for "personal, family or household purposes."

16

that is acquired "for personal, family, or household purposes" (§ 1788.2, subd. (e)).[11]

Indeed, mortgage debt has been held to constitute consumer debt, the collection of which may be governed by the FDCPA. (See *McLaughlin v. Phelan Hallinan & Schmieg, LLP* (3d Cir. 2014) 756 F.3d 240, 245–246 [letter sent to consumers by attorneys representing mortgage lender constituted attempt at "debt collection" under the FDCPA]; *Reese v. Ellis, Painter, Ratterree & Adams, LLP* (11th Cir. 2012) 678 F.3d 1211, 1216–1217 [same].)[12]

Although the defendants concede that "secured debt could still be a 'consumer debt,'" they nevertheless argue that this "does not mean a mortgage debt is a consumer debt." The defendants explain that, in their view, "[t]he deciding factor is not whether the debt is 'secured,' but whether the debt was obtained in exchange for goods or services

---

[11]    The Ninth Circuit Court of Appeals has concluded that a secured mortgage debt may be a consumer debt under the Bankruptcy Code. (See *In re Kelly* (9th. Cir. 1988) 841 F.2d 908, 913 (*Kelly*).) In reaching this conclusion, the court in *Kelly* noted that the Bankruptcy Code "defines 'consumer debt' as 'debt incurred by an individual primarily for a *personal, family, or household purpose*'" (*Kelly*, *supra*, at p. 912, italics added), the same language used in the Rosenthal Act with respect to a "consumer credit transaction." The *Kelly* court explained that, "[although] secured debt is not automatically *excluded* from consumer debt, it is not automatically included either. We must look to the *purpose* of the debt in determining whether it falls within the statutory definition." (*Id.* at p. 913, italics added.) In assessing the "purpose" of the debt at issue in the case before, the *Kelly* court stated: "It is difficult to conceive of any expenditure that serves a 'family . . . or household purpose' more directly *than does the purchase of a home and the making of improvements thereon*." (*Ibid.*, italics added.)

[12]    The FCRPA defines the term "debt" in a manner similar to the way in which the Rosenthal Act defines a "consumer credit transaction." "[D]ebt" under the FCRPA "means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction *are primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." (15 U.S.C.A. § 1692a, subd. (5), italics added.)

with a 'personal, family, or household purpose.' " The defendants' reference to "goods or services" is inapt. The Rosenthal Act covers transactions beyond those involving consumer *goods or services*. The Act specifies that it covers debt that is incurred to acquire *property*, without any limitation as to the nature of that property, as well as to services or even money. (§ 1788.2, subd. (e).) We therefore decline to look to other "federal and state statutes that apply only to purchases of 'consumer' *goods*, such as California's Song-Beverly Consumer Warranty Act or the federal Magnuson-Moss Act" in interpreting the definitions provided in the Rosenthal Act, as the defendants' request.

We also reject the conclusory argument in defendants' briefing that a real estate transaction simply cannot be considered to be a "consumer" transaction. The defendants contend, in essence, that a "real estate transaction" is an "economic transaction for a fixed and permanent asset," and usually involves "relative complexity" and a "mountain of paperwork, only some of it related to the actual funding of the transaction." According to the defendants, these facts somehow mean that such a transaction cannot be considered to be a "consumer transaction." As we have explained, however, the Legislature provided a specific definition of a "consumer credit transaction," and that definition is sufficiently broad to include transactions that involve real property; there is no indication in the text of the provision that it is intended to exclude transactions that involve real property or the use of real property as security for the debt, nor is there any indication that the statute excludes transactions that are complex or involve "a mountain of paperwork."

Further, to the extent that the defendants are advocating an interpretation of the Rosenthal Act's definition of "consumer debt" that would exclude debt secured by a deed

18

of trust to real property, such an interpretation is undermined by the fact that there is no express exemption in the Act for a debt secured by a deed of trust, and also by the fact that elsewhere in the Act, the Legislature has expressly provided for a very limited exemption with respect to transactions involving a debt secured by a deed of trust. Specifically, section 2924, subdivision (b) provides a statutory exemption from the Rosenthal Act for a *trustee* under a deed of trust as follows:

> "In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4."

The Legislature carefully crafted this exemption to apply only to a trustee under a deed of trust, and only to that trustee's performance of the acts required under Article 1 of Chapter 2 of Title 14 of the Civil Code. In enacting this exemption from the Rosenthal Act, the Legislature has expressly limited it to the acts of a trustee exercising the trustee's powers under a deed of trust. If the Legislature did not intend for the Rosenthal Act to apply to collection efforts for debts that are secured by a deed of trust to real property or for which foreclosure proceedings could be commenced or were being prosecuted, there would have been no reason to enact the exemption found in section 2924, subdivision (b).

The defendants assert that "the majority of federal courts analyzing the Rosenthal Act have excluded mortgage servicing from the definition of debt collectors," to support their position. (Some capitalization omitted.) However, many of the authorities that the defendants cite as support for this assertion in fact address a slightly different issue.

19

Specifically, many of the cases on which the defendants rely hold that *foreclosing* on a deed of trust does not constitute "debt collection" under the Rosenthal Act. (See *Pittman v. Barclays Capital Real Estate, Inc.* (S.D.Cal., Apr. 24, 2009, No. 09 CV 0241 JM (AJB)) 2009 WL 1108889, at *3; see *Morgera v. Countrywide Home Loans, Inc.* (E.D.Cal., Jan. 11, 2010, No. 2:09-CV-01476-MCE-GGH) 2010 WL 160348, at *3 [stating that "California courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA" by citing authorities that had concluded that *foreclosing* pursuant to a deed of trust does not constitute debt collection]; *Padayachi v. Indymac Bank* (N.D.Cal., Apr. 9, 2010, No. C 09-5545 JF (PVT)) 2010 WL 1460309, at *6 ["numerous courts have held that foreclosure on a deed of trust does not trigger the protections of the Rosenthal Act"].)[13] However, whether the act of foreclosing on a mortgage loan constitutes "debt collection" is a different question from the question that we are addressing, which is whether a mortgage lender or a mortgage servicer may ever be considered to be a "debt collector" under the act.[14]

---

[13]    In a footnote, the defendants also cite the following authorities, which similarly address the question whether foreclosing on a deed of trust is "debt collection" under the Rosenthal Act:  *Ricon v. Recontrust Co.* (S.D.Cal., Aug. 4, 2009, No. 09CV937-IEG-JMA) 2009 WL 2407396, at *4 [Rosenthal Act "does not apply to lenders foreclosing on a deed of trust"]; *Hepler v. Washington Mut. Bank, F.A.* (C.D.Cal., Apr. 17, 2009, No. CV 07-4804 CAS (Ex)) 2009 WL 1045470, at *4 [" 'foreclosure does not constitute debt collection under the RFDCPA' "]; *Gardner v. American Home Mortg. Servicing, Inc.* (E.D.Cal. 2010) 691 F.Supp.2d 1192, 1198 ["Further, 'foreclosure pursuant to a deed of trust does not constitute debt collection under the [Rosenthal Act]' "].

[14]    Some federal courts have explained that conduct associated with a nonjudicial foreclosure typically does not constitute a "debt collection activity" giving rise to a cause of action under the Rosenthal Act. (See *Sipe v. Countrywide Bank* (E.D.Cal. 2010) 690 F.Supp.2d 1141, 1151 [" '[t]he law is clear that *foreclosing* on a deed of trust does not

Some of the federal authorities that the defendants cite, and on which the trial court relied, have, albeit minimally, addressed the question raised by this appeal, i.e., whether a mortgage lender and/or mortgage servicer can be a "debt collector" under the Rosenthal Act, and have concluded that the answer to that question is "no." (See *Lal v. American Home Servicing, Inc*. (E.D.Cal. 2010) 680 F.Supp.2d 1218, 1224 (*Lal*) ["This Court finds that the RFDCPA does in fact mirror . . . the FDCPA, their intentions were the same and exclusive, and, as such, a loan servicer is not a debt collector under these acts" given that "[t]he law is well settled that FDCPA's definition of debt collector 'does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt' "]; *Abels v. Bank of America, N.A.* (N.D.Cal., May 31, 2012, No. 11-CV-208 YGR) 2012 WL 1980858, at *2 [dismissing Rosenthal Act claim both because "foreclosure on a residential mortgage is not 'debt collection' under the Act," but also

_____

invoke the statutory protections of the [Rosenthal Act]' " (italics added)]); see also, e.g., *Rosal v. First Federal Bank of California* (N.D.Cal. 2009) 671 F.Supp.2d 1111, 1135; *Izenberg v. ETS Services, LLC* (C.D.Cal. 2008) 589 F.Supp.2d 1193, 1199.) However, it has also been well-recognized that debt collection activities outside of the foreclosure process itself may give rise to Rosenthal Act claims. (See *Walters v. Fidelity Mortg. of CA* (E.D.Cal. 2010) 730 F.Supp.2d 1185, 1203; see also *Sau King Chan v. J.P. Morgan Chase, N.A.* (S.D.Cal., May 5, 2017, No. 16cv2403-WQH-MDD) 2017 WL 1807947, at *3 (*Sau King Chan*) ["courts must determine whether the plaintiff has alleged facts sufficient to demonstrate that the bank was engaged in *debt collection activities that fall outside of the ordinary foreclosure process*" (italics added)].) We have no need to consider, in this case, whether a mortgage lender or mortgage servicer may be sued under the Rosenthal Act for *any* activity that the mortgage servicer undertakes with respect to a mortgage, or only for those activities that are not part of the ordinary foreclosure process. This case does not involve foreclosure allegations, and the parties have raised no contention with respect to the sufficiency of the complaint with respect to the activities alleged in the complaint. Rather, the sole issue raised by the parties with respect to the Rosenthal Act is whether a mortgage lender or servicer comes within the Rosenthal Act's definition of "debt collector."

21

stating, without analysis, that "a loan servicer is not a debt collector regulated by the Act"]; *Glover v. Fremont Inv. and Loan* (N.D.Cal., Dec. 18, 2009, No. C-09-03922 (JCS)) 2009 WL 5114001, at *8 (*Glover*) [concluding, without any analysis of the Rosenthal Act, that a mortgage loan servicer "is not a 'debt collector' within the meaning of the debt collection statutes"—i.e., the FDCPA and the Rosenthal Act]; *Mannello v. Residential Credit Solutions, Inc.* (C.D.Cal., Jan. 7, 2016, No. 2:15-CV-07674-CAS-AJW) 2016 WL 94236, at *5 (*Manello*) [dismissing plaintiff's FDCPA *and* Rosenthal Act claims, without separate analysis of the Rosenthal Act, because plaintiff failed to sufficiently allege that the defendant loan servicer was "a 'debt collector' for purposes of the FDCPA"]; *Hepler v. Washington Mut. Bank, F.A.* (C.D.Cal., Apr. 17, 2009, No. CV 07-4804 CAS (Ex)) 2009 WL 1045470, at *4 [concluding, without analysis of the language of the Rosenthal Act, that mortgage lender "is not a debt collector pursuant to 15 U.S.C. § 1692a or Cal. Civ. Code § 1788.2 and therefore [lender] is entitled to summary judgment on plaintiff's FDCPA and [Rosenthal Act] claims"].)

The defendants rely on these and the other cases that involve slightly different issues to support their assertion that the "majority" of federal courts have "excluded mortgage servicing from the definition of debt collectors." We are unconvinced of this proposition. A number of other federal authorities have concluded that mortgage servicers and/or mortgage lenders *can and do* fall within the definition of "debt collector" under the Rosenthal Act. (See, e.g., *Sau King Chan*, *supra*, 2017 WL 1807947, at *3 [" 'courts have reasoned that a mortgage servicer may be a debt collector under the Rosenthal Act' "]; *Sudhir v. PHH Mortgage Corporation* (N.D.Cal., Jan. 19, 2017,

22

No. C 16-06088 WHA) 2017 WL 219681, at *2–3 (*Sudhir*) [Rosenthal Act's definition of "debt collector" is not "as restrictive as its counterpart in the FDCPA," and concluding that a mortgage servicing company may be a debt collector under the Rosenthal Act]; *Castillo v. Nationstar Mortgage LLC* (N.D.Cal., Nov. 22, 2016, No. 15-CV-01743-BLF) 2016 WL 6873526, at *5 [plaintiffs had established that Nationstar was a " 'debt collector' under the [Rosenthal Act]" by showing that Nationstar "regularly billed them and collected payments on their mortgage loan debt"]; *Cavender v. Wells Fargo Bank* (N.D.Cal., Sept. 6, 2016, No. 16-CV-00703-KAW) 2016 WL 4608234, at *8 [in the course of dismissing plaintiff's Rosenthal Act claim on different grounds, acknowledging that " 'a mortgage servicer may be a "debt collector" under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act' "]; *Wilkins v. Bank of America, N.A.* (E.D.Cal., Aug. 19, 2016, No. 2:15-CV-02341-KJM-EFB) 2016 WL 5940082, at *7 ["A mortgage servicer and an original lender may be 'debt collectors' under the Rosenthal Act"]; *Reyes v. Wells Fargo Bank, N.A.* (N.D.Cal. Jan. 3, 2011, No. C-10-01667 JCS) 2011 WL 30759, at *19 ["[a]s a number of courts have recognized, the definition of 'debt collector' is broader under the Rosenthal Act than it is under the FDCPA," and "a mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act"]; *Walters v. Fidelity Mortg. of CA* (E.D.Cal. 2010) 730 F.Supp.2d 1185, 1203 [mortgage servicer that regularly billed plaintiff and collected payments on her mortgage debt was a

23

"debt collector" under the Rosenthal Act]; *Herrera v. LCS Fin. Services Corp.*, (N.D.Cal., Dec. 22, 2009, No. C09-02843 TEH) 2009 WL 5062192, at *2.)

In our view, those federal courts that have concluded that section 1788.2's definition of "debt collector" may include mortgage lenders and mortgage servicers have the better position under an analysis of the actual statutory language. Significantly, a number of the federal courts that have concluded that mortgage lenders and servicers may not be considered to be "debt collectors" under the Rosenthal Act have either not considered the actual language of the Rosenthal Act or have relied on the fact that mortgage lenders and mortgage servicers would not be "debt collectors" *under the FDCPA* in reaching their conclusion regarding the Rosenthal Act. (See, e.g., *Lal*, *supra*, 680 F.Supp.2d at p. 1224 ["This Court finds that the [Rosenthal Act] does in fact mirror . . . the FDCPA, their intentions were the same and exclusive, and, as such, a loan servicer is not a debt collector under these acts. [FN] [¶] The law is well settled that FDCPA's definition of debt collector 'does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt' "]; *Mannello*, *supra*, 2016 WL 94236, at *4; *Glover*, *supra*, 2009 WL 5114001, at *8.) This reasoning is problematic, however, because the FDCPA statutory definition of "debt collector" differs significantly from the definition of "debt collector" provided under the Rosenthal Act; the definition of "debt collector" provided in the Rosenthal Act is far *broader* than that provided in the FDCPA. The Rosenthal Act *does not mirror* the FDCPA, and clearly does not do so with respect to the definition of "debt collector." (Compare § 1788.2, subd. (c) with 15 U.S.C. § 1692a, subd. (6).)

24

The FDCPA specifically excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." (15 U.S.C. § 1692a, subd. (6)(F).) As one federal appellate court has explained, "[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." (*Perry v. Stewart Title Co*. (5th Cir. 1985) 756 F.2d 1197, 1208.) In contrast to the FDCPA, the Rosenthal Act does not so limit the definition of "debt collector." Rather, the Rosenthal Act considers *anyone* who *regularly engages in the act or practice of collecting money, property or their equivalent* that is due or owing by a natural person as a result of a transaction between that person and another person in which the natural person acquired property, services, or money on credit, primarily for personal, family, or household purposes to be a "debt collector."

It is significant that although our Legislature adopted a number of the FDCPA's provisions, including, under section 1788.17, all of the substantive provisions applicable to debt collectors under the FDCPA, as well as the remedies for violations of those provisions, the Legislature did *not* incorporate into the Rosenthal Act 15 U.S.C. § 1692a of the federal act—i.e., the section that defines "debt collector" for purposes of the FDCPA. The express inclusion of many provisions of the federal act, but not the provision in question, indicates that our Legislature intended that the Rosenthal Act *not* mirror the federal act in this regard. As one federal court has aptly noted, "The California

25

[L]egislature clearly intended and afforded greater protection to consumers by making the Act applicable to more types of creditors." (*Sudhir*, *supra*, 2017 WL 219681, at *2– 3.)[15] Given that the Rosenthal Act does not "in fact mirror in the FDCPA" (*Mannello*, *supra*, at p. *4), particularly with respect to the definition of "debt collector," we decline to take guidance from those federal authorities that have concluded, without analysis, that the Rosenthal Act's definition of "debt collector" excludes mortgage lenders and mortgage servicers.

The defendants concede that the FDCPA and the Rosenthal Act are not entirely coextensive. However, they nevertheless argue that even though the Rosenthal Act "uses a different definition of debt collector than the [FDCPA]," this does not mean that the Rosenthal Act "regulates mortgage servicers" but the "FDCPA does not." They insist, instead, that the "[t]he FDCPA and the Rosenthal Act, though using slightly different language, both exclude mortgage servicers." However, it is clear that the Legislature intended for the Rosenthal Act to provide a broader definition of "debt collector" than that provided in the FDCPA, and, as we have explained, the Rosenthal Act's reference to an entity that attempts to collect money that is due as a result of a consumer credit transaction, by its express terms, would not exclude a mortgage servicer. There is no

---

15    In fact, the possibility that a state might adopt a more expansive definition of "debt collector" than is provided by the FDCPA is contemplated by the FDCPA's preemption provision, which specifically allows for a state law to provide for greater consumer protections than the FDCPA. That provision states: "a State law is not inconsistent with this [subchapter] if the protection such law affords any consumer is greater than the protection provided by this [subchapter]." (15 U.S.C. § 1692n.)

other provision in the Rosenthal Act that would indicate that mortgage servicers are otherwise exempt from the Act's coverage.

We therefore conclude that the Rosenthal Act's definition of "debt collector" applies to a mortgage servicer who engages in debt collection practices in attempting to obtain repayment of mortgage debt, and that the trial court improperly sustained the defendants' demurrer on the ground that the Act does not apply to mortgage servicers. Given our reversal of the court's ruling with respect to the Rosenthal Act claim, we must also reverse the court's ruling with respect to Davidson's UCL claim, since that claim is premised on his Rosenthal Act claim.[16]

C. *The trial court erred in concluding that Davidson failed to plead facts sufficient to state a cause of action against IBM on an alter ego theory*

Davidson also contends that the trial court erred in its alternative basis for granting IBM's demurrer. The trial court concluded that, as to IBM, the complaint failed to plead sufficient facts to demonstrate that IBM could be held liable for the actions of its subsidiary, Seterus. Essentially, the trial court determined that the complaint was insufficient to state a cause of action against IBM because the complaint did not sufficiently allege IBM's control of its subsidiary, Seterus.

"It is fundamental that a corporation is a legal entity that is distinct from its shareholders." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.) Included in this general principle is the concept that "a parent corporation (so-called because of control

---

[16]    The defendants concede that the UCL claim is predicated on the Rosenthal Act claim, and that it therefore succeeds or fails based on the success or failure of the Rosenthal Act claim.

through ownership of another corporation's stock) is not liable for the acts of its subsidiaries [merely on the basis of its control through stock ownership]." (*United States v. Bestfoods* (1998) 524 U.S. 51, 61.)  However, where a parent corporation that owns all of a subsidiary's stock operates that subsidiary in a manner that renders the subsidiary merely an alter ego of its parent (and a ghost of its former, independent self), courts are able to pierce the " 'corporate veil' " and treat the two entities as a single entity.  (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora Diamond*).)

In determining whether to treat a subsidiary as the alter ego of its parent corporation, a court is to assess whether (1) there is " 'such unity of interest and

ownership that the separate personalities of the [subsidiary] corporation and [its parent corporation or individual owner] no longer exist' " and (2) " 'if the acts are treated as those of the [subsidiary] alone, an inequitable result will follow.' " (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300; *CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, 788–789.)  In order to succeed on an alter-ego theory, "the plaintiff must show 'specific manipulative conduct' by the parent toward the subsidiary which 'relegate[s] the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former.' " (*Laird v. Capital Cities/ABC, Inc*. (1998) 68 Cal.App.4th 727, 742.)  As is suggested by this language, the treating of one corporation as the alter ego of another is " 'an extreme remedy, [to be] sparingly used' " (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 155 (*Hasso*)) and is to be "approached with caution" (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249).[17]

---

[17]     In evaluating the two requirements of the alter ego doctrine, courts look to the totality of the circumstances bearing on the relationship between the parent and its subsidiary.  (*Hasso*, *supra*, 227 Cal.App.4th at p. 155; *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 513 (*Greenspan*); *Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 539.)  Those circumstances include, but are not limited to (1) whether the parent and subsidiary commingle funds and other assets, (2) whether the parent has represented to third parties that it is liable for the subsidiary's debts, (3) whether the parent owns 100 percent of the subsidiary's stock, (4) whether the parent and subsidiary use the same offices and same employees, (5) whether the subsidiary is used as the " ' "mere shell or conduit" ' " for the affairs of the parent, (6) whether the subsidiary is inadequately capitalized, (7) whether the parent or subsidiary disregard corporate formalities such as holding board meetings, keeping corporate records, and acting through votes of the corporate board, (8) whether the parent and subsidiary commingle their corporate

The trial court relied on these alter-ego standards in concluding that the complaint is insufficient to state a cause of action against IBM. However, Davidson's complaint does not rest on alter-ego allegations against IBM; the complaint does not allege liability on IBM's part based *solely* on its status as Seterus's parent corporation. Rather, the complaint asserts that IBM, itself, was actively involved in the alleged illegal conduct. Specifically, the complaint alleges:

> "16. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, Defendants SETERUS, INC. and INTERNATIONAL BUSINESS MACHINES CORPORATION and/or DOES 1 through 10 (collectively 'DEFENDANTS' or 'SETERUS, INC.'), each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.
>
> "17. At all relevant times, DEFENDANTS, and each of them, ratified each and every act or omission complained of herein. At all relevant times, DEFENDANTS, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.
>
> "18. Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein."

---

records, (9) whether the parent and subsidiary have " 'identical directors and officers,' " and (10) whether the parent has diverted the subsidiary's assets to the parent's uses. (*Hasso*, at p. 155; *Greenspan*, at pp. 512–513.)

Again, in addressing a demurrer, we assume that the allegations in the complaint are true. (*Fremont Indemnity*, *supra*, 148 Cal.App.4th at p. 111.) The complaint alleges that *both* Seterus *and* IBM were actively engaged in the offending conduct. For example, Davidson alleges that each defendant ratified the other's acts, and that the defendants aided and abetted each other in committing the offending acts and omissions.[18] Davidson has therefore alleged that IBM, itself, was actively involved in the challenged conduct; the complaint is not solely about the conduct of its subsidiary entity, Seterus.[19] These allegations are sufficient to state a cause of action against IBM for violations of the Rosenthal Act and the UCL. The trial court's sustaining of the demurrer as to IBM on this basis must also be reversed.

---

[18] There are references in the complaint to conduct undertaken by "SETERUS, INC.," without reference to IBM as well. However, as Davidson points out, the complaint defines the terms "DEFENDANTS" and "SETERUS, INC" as referring to the named defendants, jointly, as well as the Doe defendants. Therefore, references in the complaint to conduct undertaken by "SETERUS, INC." are, by definition, references to conduct alleged to have been undertaken both Seterus *and* IBM.

[19] We do not intend to make any comment as to whether Davidson will be able to support these allegations with evidence as to IBM's role in the challenged conduct as the case moves forward. We are merely addressing the nature of the allegations in the complaint and their sufficiency for purposes of withstanding a demurrer.

31

IV.

CONCLUSION

The judgment of the trial court is reversed.  Appellant Davidson is entitled to costs on appeal.

AARON, J.

WE CONCUR:

NARES, Acting P. J.

HALLER, J.