Filed 12/27/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NAREN CHAGANTI, <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA CLARA COUNTY, <br><br>     Respondent; <br><br> CRICKET COMMUNICATIONS, INC., et al., <br><br>     Real Parties in Interest. | H048373 <br> (Santa Clara County <br> Super. Ct. No. 2015-1-CV-288323) |

Petitioner Naren Chaganti seeks a writ of error coram vobis. While his appeal of a civil judgment was pending, he discovered evidence, which was not in existence at the time of the judgment, that the superior court judge who had summarily adjudicated two of his causes of action owned stock in AT&T Corp. at the time of the judge's summary adjudication ruling. The defendants in Chaganti's civil action, real parties Cricket Communications Inc. (Cricket) and New Cingular Wireless PCS LLC (New Cingular), are wholly owned subsidiaries of AT&T Corp. Chaganti contends that he is entitled to a writ of error coram vobis because the judge was disqualified under Code of Civil Procedure section 170.1 at the time of his summary adjudication ruling due to his AT&T Corp. stock ownership.

Code of Civil Procedure section[1] 170.1 provides:  "A judge shall be disqualified if any one or more of the following are true: . . . (3) (A) The judge has a financial interest in the subject matter in a proceeding or *in a party to the proceeding*."  (§ 170.1, subd. (a)(3)(A), italics added.)  Section 170.5 provides:  " 'Financial interest' means ownership of more than a 1 percent legal or equitable interest in a party, or a legal or equitable interest in a party of a fair market value in excess of one thousand five hundred dollars ($1,500) . . . ."  (§ 170.5, subd. (b).)

Real parties maintain that the judge was not disqualified because AT&T Corp.'s ownership of real parties did not make AT&T Corp. a "party" to the proceeding within the meaning of section 170.1, subdivision (a)(3)(A).  They also assert that Chaganti is precluded from obtaining a writ of error coram vobis because he did not exercise due diligence in discovering the judge's AT&T Corp. stock ownership and did not otherwise satisfy the requirements to obtain such a writ.  We conclude that Chaganti has satisfied his burden and order the superior court to vacate the judgment and the summary adjudication ruling.

I.      BACKGROUND

In 2015, Chaganti filed a civil action against real parties for breach of contract, fraud, and negligence.  The action concerned a commercial lease on property in Missouri.  The named lessee on the lease was "AT&T Wireless PCS, Inc.," and the rent was paid by checks from "AT&T."  Chaganti's complaint alleged that New Cingular was "formerly known as AT&T Wireless PCS, Inc."

Real parties were represented in the trial court (and are represented in this writ proceeding) by Raymond Bolaños, who is "an Assistant Vice President and Senior Legal Counsel employed in the AT&T Legal Dept."  The case was assigned to

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

Judge Theodore Zayner. In April 2018, real parties moved for summary adjudication. Bolaños submitted a declaration in support of the motion in which he stated that he was submitting "this declaration in support of AT&T's Motion for Summary Adjudication." This motion was heard by Judge Zayner in July 2018. Judge Zayner's tentative ruling on the motion was not challenged, and an order granting the motion in part was filed in August 2018. Judge Zayner summarily adjudicated two of Chaganti's causes of action on limitations grounds, which included both of Chaganti's causes of action against both New Cingular and Cricket, leaving only two causes of action asserted solely against Cricket.

The remaining two causes of action proceeded to a jury trial before Judge Joanne McCracken in September 2018. Cricket told Judge McCracken at the outset that AT&T owned Cricket. Bolaños told the jury in closing argument that "AT&T is Mr. Chaganti's tenant." The jury returned a special verdict in favor of Cricket. In December 2018, the court entered judgment in favor of real parties and awarded them their costs and attorney's fees.

On February 19, 2019, Judge Zayner filed a Form 700 for 2018, which disclosed his financial interests for the 2018 calendar year. His 2018 Form 700 reflected that he owned stock in "AT&T Corp. (formerly Time Warner Inc.)" with a market value between $10,001 and $100,000.[2] On March 8, 2019, Chaganti filed a notice of appeal from the judgment.

In August 2019, Chaganti "serendipitously discovered" Judge Zayner's 2018 Form 700. Judge Zayner had never disclosed to the parties his ownership of AT&T Corp. stock during the pendency of Chaganti's action in the trial court. Chaganti

---

[2] Judge Zayner's 2016 and 2017 Form 700s had disclosed that he owned stock in Time Warner Inc. with a value of $10,001 to $100,000. AT&T apparently merged with Time Warner in June 2018. It is undisputed that Judge Zayner owned AT&T Corp. stock at the time of his summary adjudication ruling.

immediately filed a motion in this court seeking to vacate the judgment, but his motion was rejected due to a mediation stay. He renewed his motion after the stay was lifted. His motion was denied in June 2020 on the ground that it should have been brought in the trial court. After he petitioned for rehearing, his motion was denied in July 2020 without prejudice to the filing of a petition for coram vobis relief. In August 2020, Chaganti filed a coram vobis petition in this court. We issued an order to show cause, and real parties filed a demurrer and a return. We stayed Chaganti's appeal, *Chaganti v. Cricket Communications Inc. et al.* (H046735), pending disposition of this writ proceeding.

## II.    DISCUSSION

Real parties contend that Chaganti is not entitled to coram vobis relief because the parent corporation of a wholly owned subsidiary is not a "party" within the meaning of section 170.1, subdivision (a)(3)(A) and because he has not adequately alleged due diligence or satisfied the other requirements necessary to obtain coram vobis relief.[3] Chaganti maintains that a parent corporation is considered a party to an action against its wholly owned subsidiary for purposes of section 170.1, subdivision (a)(3)(A).[4] He also asserts that he did exercise due diligence and satisfied the other requirements to obtain coram vobis relief.

---

[3] Real parties' demurrer asks us to discharge our order to show cause and dismiss the petition because Chaganti did not demonstrate that he exercised due diligence in discovering the facts that allegedly established that Judge Zayner was disqualified. Since due diligence must be established to obtain a writ of coram vobis, we need not address the demurrer separately from the return.

[4] Chaganti raises two other issues concerning Judge Zayner's possible disqualification. First, he contends that Judge Zayner was disqualified because he was associated until 1998 with the law firm associated with one of real parties' attorneys. Section 170.1 does not apply to such a remote relationship. (§ 170.1, subd. (a)(2)(B)(ii) [association with lawyer *in last two years*].) Second, Chaganti asserts that Judge Zayner was disqualified because he owned stock in Travelers Companies Inc. (Travelers). Judge Zayner's Form 700s from 2013 to 2018 reflected

4

A writ of error coram vobis "is an extraordinary remedy." (*People v. Shorts* (1948) 32 Cal.2d 502, 506 (*Shorts*).) " 'A writ of [error] *coram nobis*[5] is not available where the [petitioner] had a remedy by (a) appeal or (b) motion for a new trial and failed to avail himself of such remedies.' " (*People v. Kim* (2009) 45 Cal.4th 1078, 1093 (*Kim*).) "The writ of error *coram nobis* serves a limited and useful purpose. It will be used to correct errors of fact which could not be corrected in any other manner." (*Id.* at p. 1094.) "Use of *Coram vobis* in civil proceedings, at least in California, is rare. The articulated grounds are the same as in the criminal arena, namely, where the error to be corrected does not appear in the record and no other remedy is available, and where the issue involved has not been previously determined." (*Los Angeles Airways, Inc. v. Hughes Tool Co.* (1979) 95 Cal.App.3d 1, 9.)

"The writ of *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.] (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.' [Citations.] This second

_____

that he owned stock in "Travelers Companies Inc." of a value between $10,001 and $100,000. Chaganti's position is that Judge Zayner's interest in Travelers was a disqualifying interest because Travelers *was the insurer* of one of the real parties. As we conclude that Judge Zayner was disqualified due to his interest in AT&T Corp., his interest in Travelers is immaterial.

    [5] "The basis for the issuance of a writ of error *coram vobis* is substantially the same as for a writ of error *coram nobis*; however, the application for a writ of error *coram nobis* should be addressed in the first instance to the [trial court]." (*Ex parte Lindley* (1947) 29 Cal.2d 709, 726.) Coram vobis relief is sought in an appellate court.

requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . .' [Citations.]" (*People v. Shipman* (1965) 62 Cal.2d 226, 230.)

Here, the fact that Chaganti alleges "would have prevented the rendition of judgment" was Judge Zayner's ownership of AT&T Corp. stock. The fact that Judge Zayner owned AT&T Corp. stock at the time of his summary adjudication ruling is undisputed, but the question of whether this fact disqualified Judge Zayner is the primary legal issue in this proceeding. Since the fact of Judge Zayner's stock ownership was plainly unrelated to the merits of Chaganti's case, the second requirement is indisputably satisfied. The parties dispute whether Chaganti satisfied the third requirement by showing that he could not have discovered this fact "in the exercise of reasonable diligence . . . substantially earlier" than he did.

### A.      *Judge Zayner's Interest in AT&T Corp. was Disqualifying*

Real parties argue that Judge Zayner's financial interest in AT&T Corp. was "not a disqualifying interest" because AT&T Corp. was "a nonparty" and a "separate entity."

The issue before us is largely one of statutory construction. We must determine whether section 170.1, subdivision (a)(3)(A) disqualifies a judge who holds stock in the parent corporation of a wholly owned subsidiary, where the subsidiary, but not the parent, is a party to the action. Section 170.1 was enacted in 1984. Before section 170.1's enactment, disqualification was governed by former section 170, which was repealed in 1984. At the time of its repeal, former section 170 disqualified a judge where he or she "is interested other than as a holder or owner of any capital stock of a corporation" and where "he or she is interested as a holder or owner of any

6

capital stock of a corporation . . . ." (Stats. 1982, ch. 1644, § 1.) The statute did not limit the interest to corporations that were parties and did not define "interested."

The 1984 version of section 170.1 provided, as it does now, that a judge is disqualified if "[t]he judge has a financial interest in the subject matter in a proceeding or in a party to the proceeding." (Stats. 1984, ch. 1555, § 5.) The 1984 version of section 170.5 defined financial interest as it does now: " 'Financial interest' means ownership of more than a 1 percent legal or equitable interest in a party, or a legal or equitable interest in a party of a fair market value in excess of one thousand five hundred dollars ($1,500) . . . ." (Stats. 1984, ch. 1555, § 9.)

The question we confront is whether, under sections 170.1 and 170.5, a financial interest in a parent corporation is "a legal or equitable interest in" the parent's wholly owned subsidiary. Real parties maintain that an interest in a parent does not fall within the ambit of section 170.1, subdivision (a)(3)(A). They rely principally on *Central Pac. Ry. Co. v. Superior Court* (1931) 211 Cal. 706 (*Central*).

We do not find *Central* controlling in this case. The underlying action in *Central* was an eminent domain action. Bank of Italy was named as a defendant because it held a mortgage on certain property owned by the landowner, but it did not appear in the action. (*Central*, *supra*, 211 Cal. at pp. 707-708.) However, Bank of Italy's mortgage did not cover the land at issue in the eminent domain action.[6] (*Id.* at pp. 709-710, 712.) Before judgment could be entered in the eminent domain action, the landowner sought to disqualify the trial judge on the ground that he was a "depositor" in the Bank of Italy, and she later also asserted that he was disqualified because he was a stockholder in Transamerica Corporation, which owned Bank of Italy. (*Id.* at pp. 710, 716.)

---

[6] The plaintiff belatedly realized that Bank of Italy had been named in the action by mistake and sought to dismiss Bank of Italy from the action after the disqualification motion was presented. (*Central*, *supra*, 211 Cal. at p. 712.)

7

The 1927 version of former section 170 disqualified a judge in an action "[t]o which he is a party or in which he is interested." (*Central*, *supra*, 211 Cal. at p. 717.) It was "settled" law at that time that "interest" in former section 170 meant "such a direct and immediate interest in the result of the litigation as would in some degree tend to form an improper bias which might influence [the judge's] conduct in the consideration and disposition of the cause." (*Central*, *supra*, at p. 717.)

The majority opinion in *Central* held that "the bare relationship of debtor and creditor" was insufficient to meet this standard.[7] (*Central*, *supra*, 211 Cal. at p. 718.) It observed that the recently enacted 1929 version of former section 170 elaborated on the nature of an interest that would result in disqualification. Under the 1929 statute, disqualification was required where the judge " 'is interested *other than as a holder or owner of any capital stock of a corporation*, *or of any bond*, *note or other security issued by a corporation*' " or " 'is interested *as the holder or owner of any capital stock of a corporation*, *or of any bond*, *note or other security issued by a corporation*.' " (*Central*, *supra*, at pp. 718-719.) The majority concluded that the role of depositor did not satisfy the standard set forth in the amended statute either. (*Id.* at p. 719.)

The majority opinion proceeded to consider whether the judge was disqualified due to his ownership of stock in Transamerica Corporation, the owner of Bank of Italy. (*Central*, *supra*, 211 Cal. at p. 719.) After observing that Transamerica Corporation was not a party to the eminent domain action, the majority reiterated that settled law held that disqualification was required only where there "appear[s] to be an immediate and direct interest in the outcome of the litigation." The majority concluded that this standard was not satisfied by the judge's stock ownership. "To be a stockholder in

[7] The case was decided by a 4-3 vote.

8

some corporation which is not and could not be made a party to the action cannot by any stretch of reasoning be held to amount to a disqualification, and we are cited to no authority which so holds." (*Id.* at p. 720.) The dissent disagreed with this conclusion. It saw "no distinction [in former section 170] as to whether this interest is due to ownership of stock directly in the corporation, which is a party to the action, or indirectly in a holding company, the owner of the stock of the first named corporation." (*Id.* at p. 721 (dis. opn of Curtis, J.).)

We are not bound here by the majority opinion in *Central* because it was based on completely different statutory language and a standard that is no longer applicable. Under sections 170.1 and 170.5, the standard is no longer whether a judge's stock ownership creates "an immediate and direct interest in the outcome of the litigation." Instead, if a judge has a "legal or equitable interest in a party" that exceeds $1,500, the judge is automatically disqualified. We conclude that this language applies to a judge's interest in the parent of a wholly owned subsidiary party. In our view, the Legislature's express reference to a "legal *or equitable* interest in a party" indicates that the Legislature did not intend for the scope of the financial interest disqualification rule to depend on the nature of any legalistic corporate organizational structure. (§ 170.5, subd. (b), italics added.)

Our construction of sections 170.1 and 170.5 is confirmed by the legislative history from their 1984 enactment. It reflects that the Legislature's enactment of the new financial interest standard, which replaced the standard employed in *Central*, was intended to create a clearer, broader, bright-line rule that would obviate any assessment of whether the judge's financial interest "in the outcome of the litigation" was "immediate and direct." The Legislature intended sections 170.1 and 170.5 to "provide a thorough revision of the law regarding disqualification," "provide clearer rules," "broaden the grounds for disqualifying a trial court judge," make the disqualification rules "more stringent," and "expand the law to cover [additional]

9

situations" where a judge might be biased. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1633 (1983-1984 Reg. Sess.) as amended Mar. 19, 1984; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1633 (1983-1984 Reg. Sess.) as amended Aug. 7, 1984.) The Legislature expressly departed from the prior rules, which had generally required proof of actual bias. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1633 (1983-1984 Reg. Sess.) as amended June 18, 1984 2.)

When we consider the express language of the statutes and the legislative history together, we can only conclude that the Legislature did not intend to exclude from the financial interest provisions a judge's ownership interest in a party's parent corporation. We take note of the obvious: The mere fact that the judge's financial interest is through a parent corporation rather than directly in the wholly owned subsidiary makes no difference with respect to the appearance of bias, which these statutes were intended to address. A construction of the disqualification statutes that depends on corporate organizational structures would be inappropriately restrictive and subvert the Legislature's intent to create clear, stringent rules that do not depend on evidence of actual bias.

None of the cases other than *Central* that real parties rely upon provide any support for their argument. *Tatum v. Southern Pac. Co.* (1967) 250 Cal.App.2d 40 did nothing more than distinguish *Central* in holding that a judge who held stock as trustee of a trust was disqualified. (*Id.* at pp. 41-42.) *Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283 had nothing to do with disqualification of a judge and merely noted that a parent corporation ordinarily is not liable for its subsidiary's actions simply because it owns the subsidiary's stock. (*Id.* at p. 305.) That case tells us nothing about the meaning of section 170.1.

We hold that a judge's ownership of stock in a parent corporation with a value in excess of $1,500 is a financial interest within the meaning of section 170.1 in the

10

parent's wholly owned subsidiary and requires disqualification of the judge where the wholly owned subsidiary is a party to an action.

## B.     Other Requirements

Real parties claim that Chaganti is not entitled to a writ of error coram vobis because (1) he had another remedy, to wit his appeal from the judgment, (2) he failed to demonstrate due diligence, and (3) there was no "extrinsic fraud" because the information about Judge Zayner's stock ownership "was publicly available." None of these claims has any merit.

Because a writ of error coram vobis "is an extraordinary remedy" (*Shorts*, *supra*, 32 Cal.2d at p. 506), it " 'is not available where the [petitioner] had a remedy by (a) appeal or (b) motion for a new trial and failed to avail himself of such remedies.' " (*Kim*, *supra*, 45 Cal.4th at p. 1093.) It is available only where the error "could not be corrected in any other manner." (*Id.* at p. 1094.) Judge Zayner's failure to disqualify himself before ruling on the summary adjudication motion cannot be corrected in any manner other than by a writ of error coram vobis. Although real parties claim that Chaganti has a remedy in his appeal from the judgment, this claim is incorrect. The appeal is limited to the appellate record, and the factual basis for Judge Zayner's disqualification does not appear in the appellate record. No other remedy is available. Hence, Chaganti satisfied this requirement.

Chaganti also satisfied the requirement that he exercise due diligence. " 'It is well settled that a showing of diligence is prerequisite to the availability of relief by motion for *coram nobis*' [citations], and the burden falls to [the party seeking relief] 'to explain and justify the delay' [citation]." (*Kim*, *supra*, 45 Cal.4th at p. 1096.) Chaganti adequately demonstrated that he could not have raised this issue until he discovered the evidence that provided the basis for Judge Zayner's disqualification,

11

and that evidence did not even exist until after judgment was entered.[8]  Since it was Judge Zayner's duty to disclose this information, it would be improper to place the burden on a party to be constantly on alert for new evidence of a judge's disqualification.  By acting swiftly upon discovering the evidence of Judge Zayner's disqualifying interest, Chaganti exercised due diligence.

In *Cadenasso v. Bank of Italy* (1932) 214 Cal. 562 (*Cadenasso*), the plaintiffs did not learn of the trial judge's financial interest in the defendant until the day that the California Supreme Court affirmed the judgment.  The plaintiffs' motion to vacate the judgment was denied, but the California Supreme Court reversed.  It concluded that the plaintiffs had properly raised the issue as soon as they learned of it.  "The plaintiffs, therefore, having discovered after the trial of the former action that the trial judge was disqualified, could raise this point at any time before the judgment became final."  (*Id.* at p. 570.)  Here, Chaganti similarly raised the issue before the judgment became final.  He raised the issue "at the 'earliest practicable opportunity' after the disqualifying facts [were] discovered."  (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 655-656, disapproved on a different point in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5; see also *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 941.)  We reject real parties' claim that Chaganti failed to exercise due diligence.

Finally, real parties' claim that there was a lack of "extrinsic fraud" because Judge Zayner's disqualifying interest was "publicly available" is meritless.  They maintain that Judge Zayner's 2018 Form 700 was "cumulative" so it did not qualify as

---

[8] Real parties claim that Chaganti did not exercise due diligence because even before Judge Zayner's ruling on the summary adjudication motion Chaganti believed that Judge Zayner was biased against him.  This claim has no relevance to Chaganti's diligence in discovering the evidence of Judge Zayner's disqualification, which was unavailable prior to judgment.

extrinsic fraud. Evidence of Judge Zayner's ownership of AT&T Corp. stock was not "publicly available" until well after judgment was entered, and this evidence was entirely extrinsic to the action. And his 2018 Form 700 was the *only* evidence of his AT&T Corp. stock ownership, so it was plainly not "cumulative."

Chaganti satisfied all of the requirements for obtaining a writ of error coram vobis.

### C. *Remedy*

Since a disqualified judge lacks jurisdiction to act, any act the disqualified judge took was "a nullity." (*Cadenasso*, *supra*, 214 Cal. at p. 568.) "It was just as much a nullity if he decided the case correctly as if he had rendered an erroneous judgment." (*Id*. at pp. 568-569.) In this case, Judge Zayner's summary adjudication ruling was a nullity, so both the judgment, which incorporated that ruling, and the summary adjudication ruling itself must be vacated.[9]

Chaganti also alleges in his petition that Judge McCracken was disqualified because she had "disclosed to the parties that she had conversations about the case with Judge Zayner." He claims that, even though "it is unclear what was discussed, it is clear that if Hon. Zayner is disqualified, then the jury verdict should be vacated along with the judgment entered in the case." The return denied this allegation and noted that Chaganti had produced no evidence to support it. Chaganti's reply to the return does not address this issue. Accordingly, we conclude that he has failed to meet his burden of demonstrating that he is entitled to coram vobis relief with regard to Judge McCracken's participation in this action.

---

[9] Real parties acknowledge that Judge Zayner's ruling "effectively gutted Petitioner's case . . . ."

## III.    DISPOSITION

The writ of error coram vobis is granted.  The superior court is directed to vacate the judgment and the order granting summary adjudication.  Chaganti shall recover his costs in this writ proceeding.

 

_____

ELIA, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

WILSON, J.

*Chaganti v. Superior Court*
H048373

Trial Court:                                  Santa Clara County Superior Court
Superior Court No.:  2015-1-CV-288323


Trial Judges:                                Honorable Theodore C. Zayner
Honorable JoAnne McCracken


Counsel for Petitioner:                 Naren Chaganti
NAREN CHAGANTI             In Pro Per


Counsel for Real Parties in Interest:   Raymond P. Bolaños
CRICKET COMMUNICATIONS INC. et al.   AT&T Services Legal Department

Jon Mark Thacker
Terry Anastassiou
Ropers Majeski Kohn & Bentley

*Chaganti v. Superior Court*
H048373