Filed 3/28/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DOV CHARNEY, | B268928 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC581130) |
| v. | |
| STANDARD GENERAL, L.P., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge. Affirmed.

Keith A. Fink & Associates, Keith A. Fink and Olaf J. Muller for Plaintiff and Appellant.

Munger, Tolles & Olson, Mark B. Helm and John F. Muller for Defendants and Respondents.

Plaintiff and appellant Dov Charney appeals the trial court's order granting an anti-SLAPP[1] motion (Code Civ. Proc., § 425.16)[2] filed by defendants and respondents Standard General, L.P., Standard General Master Fund L.P., and P. Standard General LTD.[3]

Charney was the president and chief executive officer (CEO) of American Apparel, Inc. (American Apparel).[4]  Charney's employment was ultimately terminated following an investigation into allegations that he engaged in various types of misconduct.  Standard General then issued a press release which read as follows:

> "As we have stated previously, our objective is to help American Apparel grow and succeed.  We supported the independent, third-party and very thorough investigation into the allegations against Mr. Charney, and respect the Board of Directors' decision

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation.  [Citation.]"  (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 957, fn. 3.)

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[3] Defendants are collectively referred to as "Standard General."

[4] Although not expressly stated in the briefs, the parties give the impression that, as alleged in the complaint, Standard General gained control of American Apparel.

to terminate him based on the results of that investigation."

Charney filed a lawsuit alleging several causes of action rooted in his claim that the press release contained false and defamatory information about him.  Standard General's anti-SLAPP motion was successful, prompting this appeal by Charney.  We hold Charney did not satisfy his burden of showing there was a minimal chance his claims would succeed at trial and, for that reason, affirm the trial court's order granting the anti-SLAPP motion.

## THE COMPLAINT

*Defamation.*  Charney alleged the press release contained "falsehoods, exaggerations and/or inaccuracies about [him] . . . namely that he was terminated from American Apparel's employment for '*cause*' based on the results of an '*independent*' '*investigation*' conducted by a '*third party*.'"  (Italics added.)[5]

He claimed the statements "portrayed [him] as someone found liable and/or guilty by '*independent*' and '*third party*' investigators of committing financial malfeasance and illegal sexual harassment and discrimination sufficient to terminate his employment for '*cause*.'"  (Italics added.)  Charney maintained the press release charged him with "engaging in illegal and criminal misconduct, clearly exposed [him] to hatred, contempt,

---

[5] The complaint alleged that, because the investigation of Charney was overseen by counsel for American Apparel (the law firm of Jones Day), it was not conducted by an independent third party.

3

ridicule, and obloquy, and charge[d] [him] with improper and immoral conduct."

It was alleged that Standard General committed this act with knowledge of the falsity or defamatory nature of the statements or with reckless disregard for whether they were false and defamatory.

*False Light*.  Charney realleged the press release contained falsehoods and claimed these statements were repeated throughout media outlets causing him to be "placed . . . in a false light in the public eye."  He again claimed Standard General acted with knowledge of, or reckless disregard for, the false and defamatory nature of the statements.

*Intentional Interference With Actual Economic Relations*. Charney alleged Standard General made the aforementioned false and defamatory statements with the intent to disrupt his ongoing negotiations to obtain third party assistance to regain control of American Apparel.

*Intentional Interference With Prospective Economic Relations*.  Charney claimed he had negotiated with others to obtain financing to purchase shares of American Apparel and reinstall himself as CEO.  He also maintained he had negotiated with others to "potentially work for other clothing companies, to engage in passive investments within the apparel industry, to start another competing clothing company, and to obtain financing for the same."  Charney alleged Standard General made the false and defamatory statements with the intent to "destroy, hinder and/or otherwise stop" these business efforts.

*Unfair Business Acts/False Advertising (Bus. & Prof. Code, § 17200 et. seq.)*.  Charney sought declaratory and injunctive relief, alleging Standard General would continue to republish

4

their false and defamatory statements causing others to refrain from engaging in business transactions with him.

## DECLARATIONS

*Charney's Declaration*

To support his position that the anti-SLAPP motion should be denied on the ground that there was sufficient merit to his claims, Charney submitted a declaration providing his version of the events leading up to the press release. The declaration detailed a long history of the relationship Charney had with American Apparel and Standard General. Because most of the facts asserted in Charney's declaration are not necessary to resolve the current appeal, we provide a brief overview of its relevant contents.

Charney, the founder of American Apparel, declared he was improperly terminated as CEO. On or about June 18, 2014, the Board of Directors (the Board) presented Charney with two options: (1) resign and sign over his voting rights to the Board in exchange for a severance package, an opportunity to remain with the company as a consultant, and a positive press release; or (2) be terminated for cause with his "Termination Notice," i.e., a document providing the reasons for his termination, being leaked to the press. He was provided with a copy of this notice which indicated he was being terminated for breaching his fiduciary duty, violating company policy, and misusing corporate assets. Charney was told the Board would take over American Apparel with or without his acquiescence.

5

Charney ultimately "settled" with the Board, in such a way that Standard General "effectively took over American Apparel by and through its control of the company stock and the Board . . . ." Standard General promised Charney that there would be a fair investigation into the allegations about him and that he would be reinstated as CEO unless "something profoundly egregious" was uncovered.

Standard General and Charney entered a "Standstill Agreement," which documented the nature of the impending investigation. The agreement provided that FTI Consulting, Inc. (FTI) would conduct the investigation under the oversight of a specially elected "Suitability Committee" within American Apparel. Despite the agreement, Charney learned the law firm that represented American Apparel (Jones Day) was overseeing and conducting the investigation. Charney was concerned about the impartiality of the investigation, in part, because Jones Day was defense counsel in an ongoing arbitration with Charney.

In early December 2014, the Board offered to terminate the investigation, provide him with a severance package, and hire him as a consultant as long as he relinquished his fight for control of American Apparel. The Board indicated the Suitability Committee would terminate his employment within 10 days if he did not accept the offer.

Charney rejected the offer. He was terminated on December 15, 2014, but remained the majority shareholder. The statements to the press that are the subject of this appeal followed on or about December 22, 2014.[6]

---

[6] In his reply brief, Charney argues the trial court improperly sustained some of Standard General's objections to portions of his declaration. We decline to consider the claim for

*Board Member's Declaration*

Among the declarations submitted by Standard General was that of David Danziger, a member of the Board.[7] We summarize its pertinent contents below.

While Danziger was a Board member he also served as a member of the Audit Committee and the Suitability Committee. In the spring of 2014, the Audit Committee conducted an investigation of Charney. During the investigation, information was uncovered that led a majority of the Board to consider

---

two reasons: (1) while it provides some examples, it lacks specificity in that it references "big [objectionable] chunks" without further explanation or development (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 (*Dills*) [undeveloped argument may be treated as abandoned]); and (2) it was not raised in Charney's opening brief (see *People v. Newton* (2007) 155 Cal.App.4th 1000, 1005).

[7] Standard General also filed declarations of American Apparel executives David Glazek, Allan Mayer, and Colleen Brown. Charney asserts the trial court "denied the bulk of [his] [e]videntiary [o]bjections" to these declarations. He maintains "much of" the evidence contained therein was "inadmissible hearsay" and "violated the best evidence rule." The argument lacks specificity and is undeveloped. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [appealing party required to make a reasoned legal argument]; *Dills, supra*, 28 Cal.App.4th at p. 890, fn. 1.)

In any event, the cited declarations are from executives who either attested to the specific misconduct engaged in by Charney or corroborated what was in the declaration of Danziger. They have no bearing on our holding that Charney failed to establish minimal merit to his causes of action.

7

suspending Charney pending completion of the investigation. In mid-June 2014, the Board gave Charney the option of remaining with American Apparel as a paid consultant without supervisory or financial authority, or be suspended pending completion of the investigation. When no agreement was reached, the Board unanimously voted to suspend Charney.

Charney was sent a "suspension letter" documenting the reasons for the suspension. Among the reasons stated for suspension were: (1) the failure to take steps to prevent a supervisee from creating and maintaining false and defamatory "blog posts" about former employees; (2) authorizing the payment of significant severance packages to employees to ensure his misconduct directed toward them would not subject him to personal liability; (3) repeated violations of the company's sexual harassment and anti-discrimination policies; (4) directing derogatory and disparaging comments to others; and (5) using corporate assets for personal non-business reasons without approval of the Board.

In December 2014, following an investigation of over six months, the Suitability Committee unanimously concluded that Charney was not suitable to return to American Apparel as an officer or employee. The Board then voted to terminate Charney for cause.

## DISCUSSION

*The Components of a SLAPP*

"'A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of

8

constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]' [Citation.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34.) "The goal [of section 425.16] is to eliminate meritless or retaliatory litigation at an early stage of the proceedings." (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 806.) That section provides, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In considering the application of the anti-SLAPP statute, courts engage in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712.) The defendant bears the burden on the threshold showing whereas the plaintiff bears the burden on the second prong. (*Rohde v. Wolf*, *supra*, 154 Cal.App.4th at pp. 34-35.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute . . . is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29

9

Cal.4th 82, 89.)  We review de novo the trial court's order denying an anti-SLAPP motion.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326; *Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 79.)

*Analysis*

Charney concedes Standard General satisfied the threshold burden of proving the complaint filed amounted to a SLAPP.  He maintains the trial court erred because he satisfied his burden of showing his case had merit.  We accept Charney's concession and concern ourselves only with the issue of whether Charney established sufficient merit to his lawsuit.

Charney's causes of action shared the same foundation—in order to be successful, they all required the press release to constitute a defamatory statement.  As we will explain, the evidence fell short of meeting the minimal merit necessary to establish this predicate and defeat Standard General's anti-SLAPP motion.

To meet his burden of establishing merit to his claims, a plaintiff opposing an anti-SLAPP motion "cannot rely on allegations in the complaint, but must set forth evidence that would be admissible at trial.  [Citation.]  Precisely because the statute (1) permits early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech concerns, and (2) limits opportunity to conduct discovery, the plaintiff's burden of establishing a probability of prevailing is not high:  We do not weigh credibility, nor do we evaluate the weight of the evidence.  Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to

10

determine if it defeats the plaintiff's submission as a matter of law. [Citation.] Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP. [Citation.]" (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.)

"Defamation is the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or that causes special damage. [Citation.] Thus, to state a defamation claim, the plaintiff must present evidence of a statement of fact that is provably false. [Citation.] False statements that accuse the plaintiff of criminal conduct are defamatory on their face. [Citation.] [¶] However, statements cannot form the basis of a defamation action if they cannot be reasonably interpreted as stating actual facts about an individual. Thus, rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt and language used in a loose, figurative sense will not support a defamation action. [Citation.]" (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486.)[8]

Charney appears to denote what he considers to be the core defamatory falsehoods by placing quotations around certain words in the cause of action for defamation. We previously quoted and italicized those words when summarizing the defamation cause of action as it appears in the complaint. After considering the complaint as a whole, and in light of Charney's

---

[8] It is undisputed Charney is a public figure. Thus, in order for him to recover damages for defamation he has the additional burden of establishing the person or entity issuing the false statement did so with actual malice. (*Curtis Publishing Co. v. Butts* (1967) 388 U.S. 130, 134; *Khawar v. Globe Internat.* (1998) 19 Cal.4th 254, 262-263.)

11

declaration, it appears Charney attempts to make the case for two fundamental falsities in the press release.

Charney begins by claiming the press release falsely states he was investigated by an independent third party. But, such a claim does not allege a falsehood about Charney himself. Rather, it asserts the investigative body was not a legitimate "third party" and was not "independent." "Statements do not imply a provably false factual assertion and thus cannot form the basis of a defamation action if they cannot "reasonably [be] interpreted as stating actual facts" about an individual.' [Citations.]" (*Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1401.) Moreover, Charney's argument that the investigation was not "independent" or impartial is a matter of opinion or subjective judgment and therefore cannot support an action for defamation. (See *Morningstar, Inc. v. Superior Court* (1994) 23 Cal.App.4th 676, 686-687; see also *Standing Committee v. Yagman* (9th Cir. 1995) 55 F.3d 1430, 1439.)

Next, Charney takes the position that the press release wrongly indicates he was terminated for cause. This claim is also problematic as the press release does not state the underlying reasons for terminating Charney. It does mention "allegations" were made and investigated. It also indicates Charney was terminated as a result of that investigation. But, the key missing component is the specific factual findings of that investigation. The statement cannot be proven false as it does not state that Charney engaged in criminal conduct or that his conduct violated certain standards, or even that there existed any particular conduct that caused his termination.[9] Because the press release

---

[9] Charney's defamation cause of action does allege the press release gave the impression he was terminated for committing

12

does not articulate *why* Charney was terminated, Charney's allegation that it falsely states he was terminated for "cause" does not constitute an actionable defamation.[10]

After conducting a de novo review, we hold the trial court properly granted the anti-SLAPP motion on the ground that Charney did not satisfy his burden of showing minimal merit to his claim that the press release was defamatory. We therefore decline to address Charney's remaining arguments and need not respond to the parties' competing views on whether Charney established the publication was made with actual malice.

---

"financial malfeasance," "illegal sexual harassment," and "discrimination." We see nothing in the press release to support this allegation.

[10] Even if the press release could be interpreted as somehow stating Charney was terminated for unidentified improper conduct, the fact that there may be some dispute over whether there was "improper" conduct that justified termination is a matter of opinion. (See, e.g., *Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 604 [statements concerning the fitness of a vice president and president of a union to hold office are opinions not subject to an action for libel].)

## DISPOSITION

The order granting defendants' special motion to strike the complaint (Code Civ. Proc., § 425.16) is affirmed. Defendants may recover costs on appeal.


KUMAR, J.*


We concur:


TURNER, P. J.


KRIEGLER, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14