Filed 10/17/23  Hutcherson v. G&P Enterprises CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NICOLE D. HUTCHERSON, | D081840 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00015719-CU-NP-NC) |
| G&P ENTERPRISES, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Terence J. Mix for Plaintiff and Appellant.

Klinedinst PC, Natalie P. Vance and Robert M. Shaughnessy for Defendants and Respondents.

Nicole D. Hutcherson appeals the order granting the motion of G&P Enterprises, LLC, dba Allied Trustee Services (Allied), and Sommerset Villas Maintenance Corporation (Sommerset) to strike her complaint as a strategic lawsuit against public participation (SLAPP).  She contends the superior

court erroneously ruled she had not met her burden to establish a probability of prevailing on her claims. We disagree and affirm the order.

## I.

## BACKGROUND

### A. *Hutcherson's Default on Monthly Dues Owed to Sommerset*

In April 2007, Hutcherson bought a unit in a condominium complex in Escondido for which Sommerset was the homeowners association (HOA). She paid monthly HOA dues through April 2009, when she lost her job and then defaulted on her mortgage loan and HOA dues. The mortgage lender commenced foreclosure proceedings in June 2009; and the following month, Allied, acting on behalf of Sommerset, began demanding payment of the unpaid monthly HOA dues. Hutcherson petitioned the United States Bankruptcy Court for relief in February 2010, and obtained a discharge of all prepetition debts the following May. Her mortgage lender sold the condominium at a foreclosure auction in June 2010. Hutcherson moved to Riverside and then to Chino in October 2011.

### B. *Sommerset's Small Claims Action Against Hutcherson*

In June 2012, Sommerset filed an action in the small claims division of the superior court to recover the monthly HOA dues Hutcherson had not paid between her bankruptcy filing and the foreclosure sale, plus interest, late charges, and collection fees. Sommerset listed a Riverside address for Hutcherson on the claim form. The court assigned a trial date of September 4, 2012. The claim form advised Hutcherson: "You and the Plaintiff must go to court on the trial date listed below. If you do not go to court, you may lose the case." Allied, acting on behalf of Sommerset, could not find Hutcherson

2

at her Riverside address, but found her at her Chino address and served her there in July 2012.

A week before the scheduled trial date, Hutcherson filed a form request to postpone the trial until December 4, 2012. As reasons for the postponement, she wrote: "I am unemployed. I literally DO NOT have the gas money to drive down to San Diego right now. I also need to find my bankruptcy paperwork in storage." The form advised, "**If you do not hear from the court,** you should go to court on the scheduled trial date." The court postponed trial until October 17, 2012, and mailed notice of the postponement to Hutcherson at her former Riverside address, even though she had listed her Chino address on the postponement request. She never received the notice and did not appear for trial. The court entered judgment against Hutcherson for $2,227.39 on the continued trial date, and mailed a notice of entry to her Riverside address on the following day.

Hutcherson received a copy of the notice of entry of judgment and a demand for payment from Allied, on behalf of Sommerset, at her Chino address in November 2012. She was "not that concerned about the judgment because [she] believed the bankruptcy discharge would be a total obstacle to Sommerset ever collecting on it." Sommerset formally assigned the judgment to Allied in April 2014. Allied unsuccessfully tried to collect on the judgment over the next several years.

C.   *Hutcherson's Civil Action Against Allied and Sommerset*

Based on the efforts of Sommerset and Allied to collect the monthly HOA dues Hutcherson had not paid, she filed a complaint against them in the superior court in April 2022. In a count for malicious prosecution, Hutcherson alleged Sommerset and Allied: (1) knew the notice of postponement of trial in the small claims action had been sent to the wrong

3

address and she had not received it and would not be appearing at trial; (2) knew their claim lacked probable cause to proceed with trial in her absence; (3) knew any resulting judgment would deny her constitutional right to due process of law; (4) maliciously and without justification did not inform the court about the wrong address; and (5) maliciously and without probable cause attempted to enforce the void judgment.  In a count for abuse of process, Hutcherson alleged Allied and Sommerset violated the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act; Civ. Code, § 1788 et seq.) by making false, deceptive, and/or misleading representations in their efforts to collect on a judgment they knew was void for lack of effective service of process.  She realleged the same facts in a separate count for violations of the Rosenthal Act.  In a count for fraudulent concealment, Hutcherson alleged Allied and Sommerset:  (1) provided the small claims court with a wrong address for her on the claim form; (2) never notified the court of her correct address, even though they knew it because they had served her there; and (3) concealed from her and the court that she had not received notice of the trial postponement and that the judgment they tried to collect on was void and unenforceable.  As a result of the wrongful conduct of Allied and Sommerset, Hutcherson alleged she incurred legal fees and suffered severe emotional distress.  She sought general and punitive damages, costs, and attorney fees.

Allied and Sommerset filed a special motion to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16).  They argued all of Hutcherson's claims arose from protected litigation activity in the prior small claims action and therefore were subject to being stricken.  Allied and Sommerset also argued Hutcherson could not prevail on any of her claims, because each was barred by the applicable statute of limitations, and because her action was an improper collateral attack on the judgment entered in the

small claims action. They further argued the malicious prosecution claim failed because Hutcherson could not establish a favorable termination of the small claims action; the litigation privilege (Civ. Code, § 47, subd. (b)) barred the fraudulent concealment and abuse of process claims; and the Rosenthal Act claim failed because the monthly HOA dues they sought to collect did not involve a "consumer credit transaction" (*id.*, § 1788.2, subd. (e)). In support of the motion, Allied and Sommerset submitted a declaration from Allied's general counsel, which described their involvement in the small claims action and judgment collection efforts and attached related documents.

Hutcherson filed opposition to the anti-SLAPP motion in which she did not dispute her claims arose from activity protected by the anti-SLAPP statute, but argued the motion should be denied because she had a probability of prevailing on the claims. She argued the small claims judgment was void on its face and subject to collateral attack because she never received notice of the continued trial date. Hutcherson argued none of her claims was time-barred. She argued she could prevail on the malicious prosecution claim, because: (1) Sommerset and Allied acted maliciously and without probable cause by proceeding to trial in her absence, even though they knew she intended to defend the case but had not been given notice of the continued trial date, and by seeking to collect prepetition dues they knew had been discharged in bankruptcy; and (2) the small claims action terminated in her favor to the extent the judgment included damages for monthly HOA dues that had been discharged. She argued the litigation privilege did not bar the abuse of process and fraudulent concealment claims, because they were based on nondisclosures, not communications. Hutcherson argued the HOA monthly dues constituted consumer credit transactions under the Rosenthal Act because she could pay them 15 days after the first of

5

each month without incurring a late charge.  As part of the opposition, Hutcherson submitted declarations from her attorney and herself, which described the small claims action and Allied and Sommerset's efforts to enforce the judgment and attached related documents.

The superior court held a hearing and granted the anti-SLAPP motion. The court noted there was no dispute Hutcherson's claims arose from protected activity, and ruled she had failed to meet her burden "to establish that there is a reasonable probability that she will prevail on the merits of her claims at trial."  The court ruled all claims failed because the judgment in the small claims action was not subject to collateral attack as void on its face. The court went on to rule:  (1) the malicious prosecution claim lacked merit because Hutcherson failed to establish the small claims action terminated in her favor; (2) the litigation privilege barred the claims for abuse of process and fraudulent concealment; and (3) the Rosenthal Act claim failed because the HOA monthly dues did not involve consumer credit transactions.

Hutcherson appealed the order granting the anti-SLAPP motion.  (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

II.

DISCUSSION

A.  *Contentions on Appeal*

Hutcherson challenges the order granting the anti-SLAPP motion on several grounds.  She first contends the superior court erroneously required her to show she would more likely than not prevail at trial rather than to make a prima facie showing sufficient to sustain a judgment in her favor. Hutcherson next contends the small claims judgment is void on its face and subject to set-aside because the court violated her due process rights and exceeded its jurisdiction by entering the judgment without having notified

6

her of the continued trial date.  She concedes her abuse of process claim is barred by the litigation privilege, but insists she showed each of the other claims had sufficient merit to withstand the anti-SLAPP motion.  She asks us to reverse the order and to remand the matter for further proceedings.

B.      *General Principles on Anti-SLAPP Motion and Standard of Review*

We begin with the anti-SLAPP statute:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (Code Civ. Proc., § 425.16, subd. (b)(1).)  Ruling on an anti-SLAPP motion involves a two-step process.  The court first must decide whether the defendant has shown the challenged claim arises from activity protected by section 425.16; and if the defendant has done so, the court then must decide whether the plaintiff has shown a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; *Sugarman v. Brown* (2021) 73 Cal.App.5th 152, 159.)  Only a claim that both arises from protected activity and lacks merit is a SLAPP subject to being stricken under section 425.16.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; *Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282 (*Weeden*).)

Hutcherson did not dispute in the superior court (and does not dispute in this court) that Allied and Sommerset met their first-step burden to show her claims arose from protected activity, namely, statements made or actions taken in connection with the small claims action.  (Code Civ. Proc., § 425.16, subd. (e) [protected activity includes written or oral statements made in connection with judicial proceeding]; *Rusheen v. Cohen* (2006) 37 Cal.4th

7

1048, 1056, 1065 (*Rusheen*) [protected activity includes filing and prosecuting civil action and enforcing judgment].) The burden thus shifted to her to show a probability of prevailing on the claims. (Code Civ. Proc., § 425.16, subd. (b)(1); *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) To sustain that burden, Hutcherson must submit evidence that, if accepted as true and with all reasonable inferences drawn in her favor, would suffice to sustain a judgment for her. (*Baral*, at pp. 384-385; *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 787.) As to any affirmative defenses Allied and Sommerset raised, Hutcherson must show the defense does not apply as a matter of law or submit evidence that if credited would negate the defense. (*Weeden*, *supra*, 70 Cal.App.5th at p. 288; *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 434.) Claims with " 'at least "minimal merit" ' " may proceed. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; accord, *Soukup v. Law Offices v. Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*) [plaintiff need only establish her claim has " 'minimal merit' "].)

We review de novo the superior court's determination Hutcherson failed to meet her second-step burden. (*Weeden*, *supra*, 70 Cal.App.5th at p. 282; *Charney v. Standard General, L.P.* (2017) 10 Cal.App.5th 149, 158 (*Charney*).)

C. *Whether the Superior Court Imposed an Improper Burden on Hutcherson*

Hutcherson complains the superior court erroneously imposed a heightened burden on her on the second step of the anti-SLAPP motion. She argues that by citing this court's opinion in *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108 (*McGarry*) for the point that the burden required her to establish "a reasonable probability" she would prevail on her claims at trial, the court required her to show she would more likely than not prevail when she was only required to make a prima facie showing sufficient

8

to sustain a judgment in her favor. Hutcherson says *McGarry* is "directly at odds" with *Soukup*, *supra*, 39 Cal.4th 260. We disagree.

The superior court properly relied on *McGarry*, *supra*, 154 Cal.App.4th 97. In setting out the shifting burdens on an anti-SLAPP motion in *McGarry*, we stated: "After the defendant satisfies the first step, the burden shifts to the plaintiff to demonstrate there is a reasonable probability he or she will prevail on the merits at trial." (*Id.* at p. 108.) Although we used the term "probability" found in the anti-SLAPP statute (§ 425.16, subd. (b)(1)) and not the phrase "minimal merit" found in *Soukup*, *supra*, 39 Cal.4th at page 291, we went on to describe the plaintiff's burden in terms that are consistent with the corresponding description in *Soukup*. Both cases make clear that to defeat an anti-SLAPP motion the plaintiff need only submit evidence that if accepted as true would support her claims and would negate any defenses raised by the defendant; neither case states or implies the plaintiff must show she will more likely than not prevail at trial. (Compare *McGarry*, at p. 108 with *Soukup*, at p. 291.) The superior court recognized the consistency of the cases by citing *Soukup* immediately after citing *McGarry* in its order granting the anti-SLAPP motion. We thus reject Hutcherson's contentions that the two decisions are "directly at odds" and that the superior court's citation of *McGarry* for the burden on step two of an anti-SLAPP motion "dictates a reversal on this ground alone."

D.      *Whether Hutcherson Showed Her Claims Have Minimal Merit*

We next consider each of the claims Hutcherson has not abandoned to determine whether she met her burden to show it had minimal merit. As will appear, she did not.

9

1.      *Malicious Prosecution*

Hutcherson cannot show her claim for malicious prosecution has minimal merit.  "To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant *and was pursued to a legal termination favorable to the plaintiff*; (2) was brought without probable cause; and (3) was initiated with malice."  (*Soukup*, *supra*, 39 Cal.4th at p. 292, italics added.)  Favorable termination of the prior action "is an essential element of the tort of malicious prosecution, and it is strictly enforced."  (*Ferreira v. Gray, Cary, Ware & Freidenrich* (2001) 87 Cal.App.4th 409, 413.)  Hutcherson cannot satisfy this essential element, because the prior small claims action she alleged Sommerset and Allied maliciously prosecuted against her terminated in a judgment *against her* for $2,227.39.

It is no answer to say, as Hutcherson does, that the judgment is void on its face because she was not given notice of the continued trial date, and that Allied and Sommerset acted maliciously and without probable cause in trying to enforce a judgment they knew was void.  Even were the judgment void (a point the parties dispute but we need not and do not decide), Hutcherson neither appealed nor sought to vacate the judgment, and the time to do either expired more than a decade ago.  (See Code Civ. Proc., §§ 116.740, subd. (a) [motion to vacate judgment by defendant who was not served and did not appear at trial due 180 days after discovery of entry of judgment], 116.750, subd. (b) [notice of appeal due 30 days after clerk mails notice of entry of judgment].)  Even if we assume Hutcherson could attack the judgment at this late date, success would result in a new trial, not entry of a judgment in her favor.  (See *id.*, §§ 116.730, subd. (d), 116.740, subd. (d).)  The possibility Hutcherson might prevail at a new trial in the future is insufficient to allow

her to assert a malicious prosecution claim now. (See *Babb v. Superior Court* (1971) 3 Cal.3d 841, 846 ["the cause of action for malicious prosecution first accrues at the conclusion of the litigation in favor of the party allegedly prosecuted maliciously"].)

We also find unpersuasive Hutcherson's argument the allegedly improper inclusion in the judgment of amounts for debts discharged in bankruptcy established a termination of the small claims action in her favor. (See 11 U.S.C. §§ 524(a)(1) [discharge voids judgment to extent it determines debtor's personal liability for discharged debt], 727(b) [discharge extends to prepetition debts].) Her theory is that "a claim for malicious prosecution may be pursued against a defendant charging multiple grounds of liability when some, but not all, of the grounds were asserted without probable cause and with malice," and that "the void judgment . . . reflects on [her] innocence . . . regarding a number of the damage claims." Even if the failures to pay each month's HOA dues gave rise to separate causes of action, some of which were barred by the bankruptcy discharge, that partial bar would not amount to a favorable termination. The fact remains Allied and Sommerset obtained a judgment *against Hutcherson* for those and other amounts. And even if the discharge somehow made the portion of the judgment for prepetition HOA dues favorable to Hutcherson, the portion for postpetition dues, to which the discharge does not extend (11 U.S.C. § 523(a)(16)), would not allow her to sue for malicious prosecution. "[F]avorable termination requires favorable resolution *of the underlying action in its entirety*, not merely a single cause of action." (*Citizens of Humanity, LLC v. Ramirez* (2021) 63 Cal.App.5th 117, 128, italics added.) Thus, if the plaintiff in the prior action (i.e., Sommerset) "succeeds on any of [its] claims, the favorable termination requirement is

11

unsatisfied and the malicious prosecution action cannot be maintained." (*Lane v. Bell* (2018) 20 Cal.App.5th 61, 64.)

>2. *Fraudulent Concealment*

Hutcherson cannot prevail on her claim for fraudulent concealment because it is barred by the litigation privilege, "a defense that may be considered with respect to the second prong of the anti-SLAPP analysis." (*Weeden, supra,* 70 Cal.App.5th at p. 288.) A privileged publication includes one made "[i]n any judicial proceeding." (Civ. Code, § 47, subd. (b).) "Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." (*Ibid.*) The privilege also extends to a litigant's actions that are "logically and legally related to the realization of a litigation objective," such as "collection of a judgment." (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 135 (*O'Keefe*).) Hutcherson's claim is based on such privileged communications and actions.

As noted earlier, Hutcherson alleged Sommerset and Allied listed the wrong address for her on the small claims form, and then concealed from both her and the small claims court that she did not receive notice of postponement of the trial and that the judgment on which they tried to collect was void and unenforceable. Filing in court a document with false information is privileged. (*Rusheen, supra,* 37 Cal.4th at p. 1058; *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 489.) So is taking steps to obtain or to enforce

12

a judgment, even if such steps involve fraud. (*O'Keefe*, *supra*, 84 Cal.App.4th at p. 135; *Wilton v. Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565, 570-571.) Because the communications and actions in the small claims action of which Hutcherson complained were privileged, her fraudulent concealment claim failed as a matter of law and was properly stricken as a SLAPP. (*Rusheen*, at p. 1065; *O'Keefe*, at p. 135.)

In urging us to reach a contrary conclusion, Hutcherson argues the "gravamen" or "foundation" of her fraudulent concealment claim was the refusal of Sommerset and Allied to tell the small claims court at trial that she had not been given notice of the continued trial date, a refusal she says breached their duty of disclosure and resulted in the judgment against her. Because that nondisclosure was *noncommunicative*, argues Hutcherson, the litigation privilege does not apply. The litigation privilege, however, covers not only affirmative representations by a participant in a judicial proceeding, but also a participant's silence when circumstances impose a duty to speak but the participant remains silent and thereby communicates the circumstances do not exist. (See, e.g., *Silberg*, *supra*, 50 Cal.3d at p. 210 [attorney's alleged nondisclosure of preexisting relationship potentially affecting neutrality of recommended expert]; *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1136, 1142 [executor's alleged concealment from court that plaintiff was decedent's son and had not been served with petition to administer estate]; *Kupiec v. American Internat. Adjustment Co.* (1991) 235 Cal.App.3d 1326, 1333 [defendants' "alleged concealment and misrepresentation of facts" in prior litigation were "in their essential nature, communicative"].) Hutcherson therefore cannot avoid the bar of the litigation privilege simply by asserting her claim is based on noncommunicative acts.

3. *Rosenthal Act*

Hutcherson's claim alleging violations of the Rosenthal Act lacks minimal merit because the Act does not apply to Allied and Sommerset's efforts to collect unpaid monthly HOA dues. The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." (Civ. Code, § 1788.1, subd. (b).) The Act defines "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." (Civ. Code, § 1788.2, subd. (f).) It defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." (*Id.*, subd. (e).) "Thus, for debt collection activity concerning money to fall within the scope of the Rosenthal Act, it must involve money due or owing, or alleged to be due or owing, by reason of a transaction in which property, services, or money is acquired on credit primarily for personal, family, or household purposes." (*Hagey v. Solar Service Experts, LLC* (2023) 94 Cal.App.5th 1303, 1308.) Attempts to collect monthly HOA dues do not fall within the scope of the Act.

The defect in Hutcherson's claim is the absence of any "property, services, or money" given to her by Sommerset "on credit . . . primarily for personal, family, or household purposes." (Civ. Code, § 1788.2, subd. (e); see *Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 296 (*Davidson*) [defining "on credit" as "obtaining something of value without immediate payment on the promise to make a payment or payments in the future"].) Hutcherson concedes the dues at issue were "of a traditional nature consistent with

14

[Sommerset's] overseeing the common areas on an ongoing basis," and were "payable monthly, incidental to acquiring title to the subject real property." (Fn. omitted.) "In other words, the obligation of a member of [Sommerset], like [Hutcherson], to pay the assessments is not a promise to pay later for value to be received, but, rather, it is an obligation to pay the costs of ownership as those costs arise. The assessments simply do not involve a loan or credit to members of [Sommerset], like [Hutcherson]. Nor do the assessments involve the acquisition of a product or service by a homeowner for [personal,] family or household use," because they are used for common area upkeep. (*Dickson v. Century Park East Homeowner's Assn.* (C.D.Cal., May 13, 2021, No. 2:20-cv-05152-JWH-MAAx) 2021 U.S.Dist. LEXIS 141845, at pp. *9–10, fn. omitted (*Dickson*).) Hence, "regular HOA assessments for ongoing maintenance and general services do not constitute a 'consumer credit transaction'" under the Rosenthal Act. (*Durham v. Continental Central Credit* (S.D.Cal., Oct. 20, 2009, No. 07cv1763 BTM(WMc)) 2009 U.S.Dist. LEXIS 96760, at p. *18.)

Hutcherson urges us not to follow *Dickson*, *supra*, 2021 U.S.Dist. LEXIS 141845, because, she says, it is "a noncontrolling federal trial court decision" and "is clearly distinguishable" as involving a special assessment for construction work collected before the work was done. "Although not binding precedent on our court, we may consider relevant, unpublished federal district court opinions as persuasive." (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1432, fn. 6.) We consider *Dickson* persuasive and not distinguishable on the ground Hutcherson argues. *Dickson* involved both a special assessment and regular assessments. For the reasons quoted in the preceding paragraph, the district court ruled "neither the regular assessment nor the special assessment is a 'consumer credit

transaction' for the purpose of the Rosenthal Act." (*Dickson*, at p. *4.) Those reasons apply to the HOA dues at issue here and support our conclusion that efforts to collect them are not within the scope of the Act. (See Civ. Code, § 3511 ["Where the reason is the same, the rule should be the same."].)

We are not persuaded to reach a different conclusion by Hutcherson's purported analogy of HOA dues to mortgage payments, collection of which does fall within the scope of the Rosenthal Act (Civ. Code, § 1788.2, subd. (f); *Davidson*, *supra*, 21 Cal.App.5th at p. 297). It is true, as Hutcherson points out, both debts are incident to ownership of real property, are generally payable monthly with a grace period before a late charge is imposed, and if not paid can result in imposition of a lien and foreclosure. But unlike a mortgage loan, which is an extension of credit from a lender to a borrower "primarily for [the] personal, family, or household purpose[ ]" of buying a home (Civ. Code, § 1788.2, subd. (e); see *Davidson*, at p. 297), HOA dues are not an extension of credit from an HOA to a homeowner; they are assessed to pay for services the HOA acquires to maintain common areas. (*Dickson*, *supra*, 2021 WL 3161179, at p. *5.) The extension of a grace period for payment of HOA dues before a late charge is imposed does not transform them into a "consumer credit transaction." (Civ. Code, § 1788.2, subd. (e).) An HOA's allowance of "a few extra days to pay [monthly dues] without receiving, or expecting to receive, anything in return" is a "generous act [that] simply cannot be construed as a 'consumer credit transaction.'" (*Yatooma v. OP Property Management LP* (C.D.Cal., July 20, 2017, No. 2:17-cv-02645 ODW (SSx)) 2017 U.S.Dist. LEXIS 114298, at p. *8.)

In sum, the unpaid HOA dues Sommerset and Allied tried to collect from Hutcherson did not involve a "consumer credit transaction" within the scope of the Rosenthal Act (Civ. Code, § 1788.2, subd. (e)). We thus need not,

16

and do not, consider the parties' arguments on whether Sommerset was a "debt collector" under the Act (*id.*, § 1788.2, subd. (c)) or whether Allied and Sommerset violated the Act as alleged in the complaint (*id.*, §§ 1788.15, subd. (a), 1788.17).

4. *Conclusion*

For the reasons discussed above, Hutcherson did not sustain her burden to show her claims for malicious prosecution, fraudulent concealment, and violations of the Rosenthal Act had the minimal merit needed to survive Allied and Sommerset's anti-SLAPP motion. (*Baral*, *supra*, 1 Cal.5th at pp. 384-385; *Weeden*, *supra*, 70 Cal.App.5th at p. 287.) The superior court therefore correctly granted the motion and struck the complaint. (*Charney*, *supra*, 10 Cal.App.5th at p. 158; *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 214.) That conclusion makes it unnecessary for us to consider, as an alternative basis for affirming the court's order, Allied and Sommerset's contention that each claim is barred by the applicable statute of limitations.

## III.

## DISPOSITION

The order granting the special motion to strike the complaint is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

RUBIN, J